Shepherd's Adm'r

*v.*

Chapman's Adm'r.

(*Supreme Court of Appeals of Virginia, March 28, 1895.*)

[21 S. E. Rep. 468.]

**Bill of Review—Errors Apparent on Record—To What Court Confined.\***

On a bill of review asking for the reversal of a decree for errors apparent on the face of the record, the court is confined to what appears on the face of the decrees, the opinion of the court, and orders and proceedings in the cause arising on facts either admitted by the pleadings or stated as facts in the decrees.

**Decree of Supreme Court—Review of—After-Discovered Evidence.**

All decrees of the supreme court are a finality, and cannot be reviewed, except for after-discovered evidence.

*Decree of Supreme Court—Conclusiveness of.†*

Where a question has been adjudicated by the supreme court with a full knowledge of all the facts, the adjudication will not be disturbed, though it is apparently erroneous.

Appeal from circuit court, Orange county.

Proceedings for the settlement of the estate of William Shepherd, deceased. James Shepherd and Reynolds Chapman qualified as executor of said Shepherd. From a decree in favor of the administrator of said Chapman, administrator of George Shepherd appeals. Affirmed.

---

\*See generally, monographic note on ''Bills of Review'' appended to Campbell *v.* Campbell, 22 Gratt. 649 (Va. Rep. Anno.).

†See foot-note to Campbell *v.* Campbell, 22 Gratt. 649 (Va. Rep. Anno.).

*W. W. Burgess*, *G. D. Gray*, and *J. W. Bell*, for appellant.

*Jas. G. Field*, and *J. G. Williams*, for appellee.

KEITH, P., delivered the opinion of the court.

In 1849 a chancery suit was instituted in the circuit court of Orange county by Lewis B. Williams, administrator c. t. a. of George Shepherd, the general object of which was the settlement of the estate of which William Shepherd had died possessed some time about the year 1825. James Shepherd and Reynolds Chapman qualified as executors of the will of William Shepherd, deceased, giving separate bonds as such, and proceeded to administer the estate. At the time of the institution of this suit Reynolds Chapman had died, and Thomas T. Slaughter and John M. Chapman had qualified as his administrators, giving separate bonds. All the necessary parties were made to the suit, including the administrators of Reynolds Chapman, deceased, and when the case was ready for a hearing all proper accounts were ordered. The commissioner, Mr. Murray, settled the accounts of both Slaughter and Chapman, and among other items passed upon by the commissioner is one for the sum of $2,400, which is the ground of contention in the present controversy. Among the assets which came into the hands of Slaughter and Chapman, as administrators of Reynolds Chapman, was a claim against Conway C. Macon and Ambrose Madison for a large sum. This claim was really a part of the estate of William Shepherd, deceased ; and, while the fact does not distinctly appear, it may be inferred that it was evidenced by bonds or notes of Macon and Madison, made payable to James Chapman and Reynolds Chapman, executors of William Shepherd, deceased, and that, by the death of James Chapman, Reynolds Chapman became his surviving executor, and upon his death that they passed into the hands of his administrators. Certain it is that the claim was duly paid over to the administrators of Reynolds Chapman, deceased, in obedience to

a decree of the circuit court of Spottsylvania county rendered at its May term, 1851. On page 151 of the "Old Record" the amount $3,737.85 was charged by the commissioner to John M. Chapman, and he is credited on the other hand with certain fees, commissions, and costs attending its collection, leaving a net balance against him on this account of $3,430.97. On page 79 of the "Old Record" occurs the following paragraph in the commissioner's report: "Your commissioner further reports that in the year 1851 the said John M. Chapman, administrator as aforesaid, let his coadministrator, Thomas T. Slaughter, have $2,400 of the assets of the estate of Reynolds Chapman, deceased, which came to his (John M. Chapman's) hands. Your commissioner, however, has not charged this sum to the said Slaughter, but has to the said Chapman, as it was a mere loan of money by the latter to the former." This report was returned to the court, divers exceptions were taken to it, but none affecting the question under consideration; and it came before the court at May term, 1860, when part of the exceptions were sustained, others overruled, and the report sent back to the commissioner to be reformed. He at the same term returned a report in conformity with the views of the court, which was confirmed without exception. From this decree an appeal was taken to this court, and after pending here until 1874 was decided, and the decree appealed from was, in every particular pertinent to the inquiry now before us, approved and affirmed. When the case went back to the circuit court of Orange county, Murray was directed to restate the accounts in those respects in which this court had found them to be erroneous, and on February 1, 1875, the commissioner filed his report. John M. Chapman appeared before the commissioner and represented to him that an error had been made by the commissioner in his report before referred to, greatly to his prejudice, in charging him with the whole of the money received from the Madison-Macon compromise; that in very truth Thomas T. Slaughter, his coadministrator, had received

$2,400 of that sum ; and he exhibited Slaughter's bond to him dated January 25, 1864, which is an obligation on Slaughter's part to pay Chapman, or those who may be entitled thereto, as creditors of Reynolds Chapman, deceased, the sum of $2,400, with interest from its receipt, and thereby to save Chapman harmless.  The bond recites that Chapman, having received money from the suit in Fredericksburg, had immediately turned over, by his check, $2,400 part thereof to Slaughter, and that he (Slaughter) should have been charged with it in the original report instead of Chapman.  The commissioner seems to have felt that the decree of this court, under which he was acting, having confirmed the report as to this item, that the matter had passed beyond his control, and refers to Campbell v. Campbell, 22 Grat. 649, as authority for that position. . He made, however, alternate statements upon the subject ; and the court at its October term, 1876, entered a decree which is final in its character, so far as the liability of Thomas T. Slaughter and John M. Chapman is concerned.  By that decree, notwithstanding the fact that Slaughter admitted his liability for this sum of $2,400 and interest, and though both he and Chapman excepted to the report because it did not place the liability for it upon Slaughter, by whom both agreed it should in justice be borne, the principal report of the commissioner was confirmed, the alternate statements which stood as exceptions to his principal report were overruled, and Chapman was required to pay a sum which embraced this item of $2,400, and Thomas T. Slaughter was relieved from its payment as administrator.  The court in this decree continued to treat it as a mere loan from Chapman to Slaughter,—a private transaction between them,—and, in pursuance of this view of the matter, gave Chapman a decree against Slaughter for the sum of $2,400, with interest from the 29th of May, 1852.  At July rules, 1876, an amended bill was filed, the object of which was to make Thomas Scott, surety on the administration bond of Thomas T. Slaughter, and John Willis, surety of John M. Chapman, parties defendant.

The case proceeded against them, and at October term, 1890, a decree was entered declaring, among other things, that Thomas Scott, surety as aforesaid, was not liable for this sum of $2,400 and interest. To this decree a bill of review was presented, praying that the decree complained of may be reviewed and reversed for error apparent on the "face of the record," and for after-discovered evidence.

I cannot think that the first ground is seriously relied on. There is certainly nothing upon the "face of the record," in the sense in which that term is used in this connection, which discloses error. We are confined to the consideration of what appears on the face of the "decrees, the opinion of the court, orders and proceedings in the cause, arising on facts either admitted by the pleadings or stated as facts in the decrees (or opinions of the court); and the evidence in the case cannot be looked into in order to show the decrees to be erroneous in the statement of the facts." Thomson v. Brooke, 76 Va. 160. Now, all that is apparent to us upon the "face of the record" was equally so to this court when the decree of 1874 was rendered, and it is well settled that a bill of review will not lie to a decree of this court for errors apparent. It is also well settled that all decrees of this court partake of the equality of finality, and that an interlocutory decree of this court can no more be reviewed in this or any other court for apparent errors than could a final decree. A bill of review, however, does lie to a decree of this court upon the ground of after-discovered evidence. It is material, therefore, to inquire what evidence has been before the circuit court of the county of Orange and the court of appeals at the time of the rendition of the several decrees in this cause. When Commissioner Murray stated the original report in this case, heretofore referred to, all the parties to the payment of the money arising from the compromise against Macon and Madison were alive. John M. Chapman and Thomas T. Slaughter were living, and were parties to this suit. Saunders, the administrator de bonis non of William Shepherd,

deceased, was also a party to this suit; and Forbes and Marye, through whom this money was paid, were also living in the city of Fredericksburg, for there is a letter in the "Old Record" from them at page 200. It is hardly necessary to say that these gentlemen, who are the only parties to the transaction, knew all the facts attending it. Indeed, the commissioner's report is conclusive proof that every fact material to the proper determination of the relative liability of John M. Chapman and Thomas T. Slaughter, with respect to the matter of the controversy, was known to the commissioner, and is substantially set forth in his report. John M. Chapman, with full knowledge of all the facts, and the parties interested as distributees with knowledge, or the means of knowledge, within their reach, deliberately stood by and permitted this account to be disposed of by the court, and that decree to be affirmed in this particular in this court without one word of objection. Such conduct is only explicable upon the hypothesis that it was in 1860 a matter wholly immaterial to those interested in the distribution of the fund whether the liability to them was imposed upon Slaughter or Chapman, one or both, as either was doubtless considered amply able to meet the obligations. The same consideration actuated John M. Chapman, but in 1864 he was aroused to the consciousness of his danger, and in the hope of averting it took a bond from Slaughter, which sets out the whole matter fully and frankly. The evidence particularly relied upon as after discovered is found in the following paper :

"I, Thos. T. Slaughter, do make the following statement, to be used by Commissioner Murray as evidence in the statements of the accounts before him in the suit of Shepherd's Administrator v. Chapman's Administrator and others: 'In the year 1851, I, as the administrator of Reynolds Chapman, received a sum of money ($2,400.00), and placed the sum as a charge to myself on my books, and am now due the same, with interest from the date of its receipt, 'and should be charged therewith as such administrator. Said money was received

from John L. Marye and John M. Forbes under a decree of the circuit court sitting in Fredericksburg in the suit of Madison and Macon v. James Shepherd and Reynolds Chapman, Ex'rs of Wm. Shepherd, Deceased.'

"Shepherd's Adm'r et al. v. Chapman's Adm'r et al. [Page 55:] The date of said receipt of money, being shown by referring to the record in the suit of Shepherd's Administrators v. Chapman's Administrator and others, is of July 17, 1851. Thos. T. Slaughter, Administrator of R. Chapman, Deceased. April 18, 1876."

"Orange County—to wit: This day Thos. T. Slaughter personally appeared before me, and made oath that the above statement is true to the best of his knowledge and belief. Witness my hand this 18th day of April, 1876. Richard Chapman, Commissioner Chancery, Orange County Court."

It appears by the affidavit of Judge John W. Bell and W. W. Burgess that they knew nothing of this paper untill November, 1890, when it was found in the records of this cause, which are very voluminous. Of course their statements are conclusive as to all matters set out in their affidavit, but the affidavit seems to me to be wholly insufficient, when examined by the light which this record affords. Upon its face the affidavit of Thomas T. Slaughter appears to have been sworn to before Richard Chapman, a commissioner in chancery of Orange county, as early as the 18th of April, 1876, and it introduces into the record no fact not fully known from the beginning. Commissioner Murray, and all the parties in interest, knew every fact attending this transaction from its inception, for they are spread at large upon the face of the commissioner's first report; not the details of it, it is true, but enough to have warranted, indeed, in my opinion, to have required, the court to hold Thomas T. Slaughter primarily responsible as between himself and John M. Chapman for the sum received by him. The statement, therefore, relied upon for the bill

of review is not after-discovered evidence, and, at best, is merely cumulative in proof of facts as to the existence of which the record contains overwhelming evidence.

The decree of the court of appeals was rendered more than 20 years ago. It disposes of this precise point. It then became res adjudicata. It was again considered by the commissioner, and his report brought to the attention of the court on this very point by exceptions, and those exceptions were passed upon by the decree of the circuit court of Orange rendered October 5, 1876. That court, as we have seen, approved the report of the commissioner, and established the liability of John M. Chapman and Thomas T. Slaughter in accordance therewith; and I repeat that every fact material to this inquiry was known, or the means of knowledge were within the reach of every person concerned in it, from 1851, at every stage of this litigation, in the office of the commissioner, and in the courts, down to the time when the final decree was entered, October 5, 1876. From that decree no appeal was taken; no bill of review was ever filed. It exonerated Thomas T. Slaughter, the principal, from liability for this debt as administrator. It established, beyond the reach of further question or controversy, that the transaction between himself and John M. Chapman, by which $2,400 of the assets of the estate of William Shepherd were paid to Thomas T. Slaughter, was, in the language of the commissioner, "a mere private transaction between them." The last decree entered in this cause on the 6th day of October, 1890, upon the amended bill, does not change in any respect the decree of October 5, 1876. It overrules the demurrer of Thomas Scott's administrator to the amended bill; establishes his liability for the sum of $1,587.78, the amount found due by Thomas T. Slaughter by the decree of October 5, 1876; and exonerates the estate of the surety from any liability by Thomas T. Slaughter on account of the decree for $2,400 and interest in favor of John M. Chapman against

said Slaughter. How could the court have done otherwise? The case for 40 years has proceeded before the circuit court, and in the court of appeals, upon the theory that Slaughter was not liable, as administrator, for the sum of $2,400, and it would have been extraordinary to have held the surety to be responsible for the default of his principal, when the principal himself had been fully acquitted and absolved. We are therefore of opinion that the decree of the circuit court of Orange county refusing leave to file a bill of review, and the decree of that court rendered October 6, 1890, must be affirmed.