## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### Sharp and Others v. Shenandoah Furnace Co.

December 5, 1901.

1. EJECTMENT—*Constructive Possession—Conveyance of Part in Actual Possession.*—Constructive possession is dependent upon the actual possession, and must continue or fail with it. Hence, if the occupying claimant conveys that part of the tract of which he had actual possession, but not the whole tract, he loses his constructive possession of the residue, unless he takes actual possession of some part thereof.

2. BILL OF REVIEW—*Record.*—For the purpose of examining all errors of law, the pleadings and other proceedings in the cause are to be looked to on a bill of review, as they are as much a part of the record as the decree complained of itself.

4. EJECTMENT—*Color of Title.*—Color of title, for the purpose of adverse possession under the statute of limitations, as to land, is that which has the semblance or appearance of title, legal or equitable, but which in fact is no title. It is not necessary that the title under which a party claims should be a valid one, or that his grantor should have had title. A claim under a grant is a claim under color of title, and will draw to the possession of the grantee the protection of the statute of limitations if the other requisites of the statute are complied with.

5. EJECTMENT—*Color of Title—Effect—Claim of Title.*—The only effect of claiming under a deed, or paper title, upon the question of adverse possession, is to enlarge and extend the possession beyond the portion actually occupied to the whole lot described in the deed. To constitute an adverse possession of land, entry and possession under claim of right or title is sufficient.

6. EJECTMENT—*Color of Title—Description—Extrinsic Evidence.*—Any description which, unaided by extrinsic facts, satisfies the mind that the land adversely occupied is embraced within the description given in the deed will be sufficient. So, also, an indefinite description will be sufficient if the court can, with the aid of extrinsic

evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed. But the description must be such that it can be rendered certain by such evidence.

Appeal from a decree of the Circuit Court of Rockingham county pronounced November 9, 1900, in a suit in chancery wherein one Ann P. Hilliard was the complainant in the original bill, and the appellants and the appellee and others were the defendants.

*Affirmed.*

The opinion states the case.

*John E. Roller, George G. Gratton, H. M. T. Beekman* and *Henry T. Traphagan,* for the appellants.

*Sipe & Harris,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Rockingham county dismissing a bill of review, filed by appellants, to review and reverse for errors of law appearing upon the face of the record, a decree made February 16, 1897, in the cause of *Ann P. Hilliard* v. *Robert P. Sharp & als.*

The original bill was filed by Ann P. Hilliard, against appellants, as heirs at law of John Sharp (deceased), together with the unknown heirs of John Baptiste Denard, and the Shenandoah Furnace Company appellee, for the purpose of having partition of a tract of 20,000 acres of land, lying partly in the county of Rockingham, and partly in the county of Page, known as the "Peaked Mountain Survey" or "Big Survey," and in connection therewith, "to have the court take judicial cognizance of certain questions of law affecting the legal title, and especially of the question as to the effect of certain deeds under which the appellee claimed the land;" it being alleged that the

title of appellee was invalid and worthless, and would be so held, and the lands decreed to Ann P. Hilliard, as the owner of one moiety of a part thereof, and to appellants as the heirs of John Sharp, for the other moiety of a part thereof, and to the heirs at law of John Baptiste Denard, as the owner of a portion of a tract, containing about 3,000 acres.

At the October term, 1894, the cause was heard upon the original bill, an amended and supplemental bill filed by complainant, the demurrer and answer of appellee to said bills, the deeds filed with its answer, and which are called in question by the bills, and under which appellee claims title to the land, the joint and several answers of appellants, and upon the issues joined upon all of the pleadings; whereupon the demurrer was overruled, and the cause referred to a commissioner, with instructions to ascertain and report:

"1st. Who held the legal title to said lands, and upon what instruments said title was based.

"2d. Whether the Shenandoah Furnace Company had possession of said land, or any part thereof, and held the same adversely, and whether such adverse possession had been sufficient to ripen the same into a good title to said land, or any part thereof; and,

"3d. Any other matter or matters deemed pertinent, or upon which any party in interest might require him to report."

The commissioner was also authorized to have made such surveys of the lands as might be agreed upon by counsel, or as he might desire, or deem necessary.

At the October term, 1895, the cause was again heard, and, by consent of parties, an action of ejectment, which had been instituted by Ann P. Hilliard and appellants against appellee to recover the same land, pending on the law side of the court, was continued, the demurrer of appellee was withdrawn, and it was agreed between the parties that the master commissioner should make up and complete his report upon the principles ap-

plicable to an action of ejectment, and the cause be heard and determined by the court upon those principles.

At a special term of the Circuit Court, on February 17, 1897, the cause was again heard upon the pleadings, the master commissioner's report, and the depositions, and a plat and survey of the land, returned therewith, filed April 1, 1896, the exceptions to the report taken by both appellants and appellee, and the decree here asked to be reviewed and reversed was made.

So far as it is material to the issue, and omitting the formal part, and that disposing of the exceptions to the master's report, the decree is as follows:

"On consideration whereof, and after mature consideration of the questions presented by the record, the court is of opinion and doth decide as follows:

"First. That it is satisfactorily proven that Charles Smythe and Ann, his wife, conveyed to Daniel Proudfit and John Sharp the land in controversy, and that the same passed to the plaintiff and the defendants, the heirs of John Sharp, giving them a complete paper title thereto.

"Second. That the deed from States Wilkins and George F. Butler, trustee for Helen D. Hawsworth, to Daniel Forrer, Henry Forrer, and Samuel Gibbons, conveying the 20,000 acres of land in controversy in this cause, was sufficient to give color of title to the limits of the survey, and furnishes a basis to support the claim of adversary possession.

"Third. That the defendant, The Shenandoah Furnace Company, and those under whom its claims, have had actual adversary possession of the McKernan tract, designated on the map of J. G. Myers as "Tract No. 1," for the statutory period, sufficient to bar the right of entry of the plaintiff and the Sharp heirs, and that the title of said Furnace Company thereto is indefeasible and must be held firm and stable.

"Fourth. That the Shenandoah Furnace Company has had adversary possession of the tract of 2,987¾ acres, called the

"John Baptiste Denard land," and designated as Lot No. 2 on map of said J. G. Myers, for the statutory period and sufficient to bar the right of entry of his heirs, the defendants, and that the title of the Shenandoah Furnace Company thereto is indefeasible and must be held firm and stable.

"Fifth. That as to the remainder of the 20,000-acre tract involved in this cause, and designated as "Lot No. 3" on the map of J. G. Myers, the defendant, the Shenandoah Furnace Company, and those under whom it claimed, has had adversary possession thereof as hereinafter set forth and determined for the statutory period, and sufficient to bar the right of entry of the Sharp heirs; that Daniel Proudfit's moiety descended upon his death to his son, James O. Proudfit, and to his daughter, Jane Traphagen; that James O. Proudfit died in 1861, devising his moiety of the moiety of Daniel Proudfit to the plaintiff; that Jane Traphagen died in 1865, passing her interest to her heirs-at-law, to-wit: the plaintiff, Cornelius Traphagen and Henry Traphagen; that the sale to McKernan, in 1853, operated to dissever his possession of the McKernan tract from the rest of the 20,000 acre tract, and consequently the Forrers had no constructive possession of Lot No. 3 until the rescission of the contract with McKernan in 1861, and their reinvestment with the title of the whole tract; that upon being so reinvested the possession of the McKernan tract operated to give them constructive possession and adverse possession therefore of the whole tract; that the statute of limitations was suspended until the first of January, 1869; that the said defendant company and those under whom it claims held, from that time, such possession for the statutory period sufficient to bar the right of entry of Cornelius Traphagen and Henry Traphagen; but the plaintiff, being under the disability of coverture which continued until 1892, is not barred of her right of entry on three-twelfths of Lot No. 3, as devisee under the will of James O. Proudfit, and of one-twelfth as heir-at-law of James Traphagen, and conse-

quently is entitled as devisee and heir-at-law as aforesaid to four-twelfths of said lot No. 3, and that the residue, to-wit: eight-twelfths of said tract No. 3, is held by the Shenandoah Furnace Company, whose title to said eight-twelfths is indefeasible."

The residue of the decree merely overrules the exceptions to the master's report, so far as they were inconsistent with the principles established by the decree, or any of them, and carries out the findings and conclusions of the court, the first four of which are not controverted.

It appears that the "Peaked Mountain Survey" or "Big Survey" was, by the map made by Surveyor Myers and returned with the master commissioner's report, referred to in the decree of February 17, 1897, platted as three separate, but contiguous, tracts; Tract No. 1, the McKernan tract of 7,554 acres; Tract No. 2, the Denard tract, of 2,987¾ acres, and Tract No. 3, the one in controversy, and which embraces the residue of the original survey and grant. The Forrers, under whom appellee claims, had been in actual possession of Lot No. 2, the McKernan tract, from 1848 to 1853, with constructive possession of Lot No. 3, under a deed to them and one Gibbons from States Wilkins and others of October 10th, 1836, and it is not controverted that that conveyance was sufficient to give color of title to the limits of the "Peaked Mountain Survey," and furnished a basis to support the claim of adversary possession.

It is insisted for appellants that the decree of February 17, 1897, complained of, states the facts upon which the court bases its decision denying them the right of recovery of their part of Lot No. 3, and therefore we are not to look beyond the decree in determining whether or not that decision is an error of law.

If, as is further contended, the decree states all the facts upon which the decision of the court is based, and the appellants are denied the right of recovery of their interest in the land embraced in Lot No. 3, upon the ground that appellee and

those under whom it claims had constructive possession of Lot No. 3 by the actual possession in the Forrers of Lot No. 1, the McKernan tract, up to 1853, and their reinvestment of this actual possession upon the rescission of the contract with Mc-Kernan in 1861 with title to the whole tract, and that that possession related back to the possession in the Forrers when it was dissevered by their sale to McKernan in 1853, the decree would be plainly erroneous.

Constructive possession is dependent upon the actual possession, and must continue or fail with it. Consequently, if the occupying claimant conveys that part of the tract which constituted his actual possession, but not the whole tract, he loses his constructive possession of the residue, unless he takes actual possession of some part thereof. 1 Amer. & Eng. Enc. L. (2nd ed.) 865-6; 1 Cyclopædia Law & Proc. 1129; *Trotter* v. *Cassady,* 3 A. K. Marsh. (Ky.) 365; *Cunningham* v. *Roberson,* 1 Swan, (Tenn.), 137; *Chandler* v. *Rushing,* 38 Tex. 591; *West* v. *McKinney,* 92 Ky. 638.

The decree asked to be reviewed is not in conflict with the doctrine just quoted. On the contrary, it declares that the sale to McKernan in 1853 operated to dissever his possession of the McKernan tract from the rest of the 20,000 acre tract, and consequently the Forrers had no constructive possession of Lot No. 3 until the rescission of the contract with McKernan in 1861, and their reinvestment with the title to the whole tract. The point of appellants' attack, however, is the declaration following in the decree "that upon being so reinvested, the possession of the McKernan tract operated to give them (the Forrers) constructive possession and adverse possession, therefore, of the whole tract."

It is to be borne in mind that the report of the master was to be made up and completed upon the principles applicable to an action of ejectment, and the cause heard and determined by the court upon those principles.

All of the authorities agree that, for the purpose of examining all errors of law, the pleadings and other proceedings in the cause are to be looked to upon a bill of review, as they are as much a part of the record as the decree complained of itself. *Wroter's Assignee* v. *Armat, &c.,* 31 Gratt. 250; *Rawlings* v. *Rawlings,* 75 Va. 88; *Parker* v. *Dillard,* Ibid. 422; *Pracht & Co.* v. *Lange,* 81 Va. 711; *Daingerfield, &c.,* v. *Smith, &c.,* 83 Va. 93; *Shepherd's Admr.* v. *Chapman, &c.,* 21 S. E. 468; *Putnam* v. *Day,* 22 Wallace, 60; Story's Eq. Pl., sec. 407; 1 Barton's Chy. Pr. 334; 2 Dan'l. Chy. Pr. (5th ed.), 1577, and note.

It is argued for appellants that the sale to McKernan in 1853 resulted in the cutting off and separation of the land embraced therein from the residue of the "Peaked Mountain Survey," and that when it was reconveyed to the Forrers, or the contract of sale rescinded in 1861, they held the land under a different claim of title from that under which they held the land in controversy, *i. e.,* Lot No. 3; therefore, their reinvestment with the title and actual possession of the McKernan tract, claiming title to the limits of the boundaries of the residue of the original survey, including Lot No. 3, did not operate to give them constructive possession of the latter.

Even if the line dividing the land embraced in the sale to McKernan from the residue of the original tract had been definitely located and marked (which was never done until after the institution of this suit), the land embraced in the McKernan purchase, or contract of purchase, was not only contiguous to the residue of the survey known as Lot No. 3, but that with which such residue was claimed, occupied, used and dealt with as one tract—the "Peaked Mountain Survey" or "Big Survey."

Upon the question of adverse possession it is immaterial whether the lands in controversy be embraced by one or several coterminous grants of the older patentee, or one or several coterminous grants of the younger patentee. In either case, the lands granted to the same person by several patents, must be

regarded as forming one entire tract.   *Overton's Heirs* v.
*Davisson,* 1 Gratt. 216.

In *Rich* v. *Braxton,* 158 U. S. 375, the opinion of the court
says: "In considering the question of the possession of the
various tracts of land claimed by the plaintiffs, as heirs-at-law of
Caperton, the court below proceeded upon the ground that the
surveys being coterminous, all of the tracts should be regarded
as one tract. 'Upon the question of adversary possession,' the
Supreme Court of Appeals of Virginia said in *Overton's Heirs*
v. *Davisson,* 1 Gratt. 211, 214 . . . . . . 'it is immaterial
whether the land in controversy be embraced by one, or several,
coterminous grants of the younger patentee. In either case the
lands granted to the same person by several patents must be re-
garded as forming one entire tract.' The same principle was
announced in *Ewing* v. *Burnet,* 11 Pet. 41, 53 . . . . . .; and
in *Simmon's Creek Coal Co.* v. *Doran,* 142 U. S. 417,
443. . . . . ."

In *Hole* v. *Rittenhouse,* 25 Pa. St. 491, it was held that
"where several surveys have become vested in one owner, they·
are to be regarded as one tract for all the purposes of disseizin
and remedy."

"This rule," says Hutchinson, on Land Titles, p. 229, citing
*Overton* v. *Davisson, supra,* and *Garnett* v. *Ramsey,* 26 W. Va.
370, "is so absolute and controlling that if the same owner or
claimant has several coterminous tracts under different claims of
title, and he has actual possession of· part of but one of such
tracts, he will in law be regarded as having actual possession of
the whole of each and all of the coterminous tracts."

As opposed to this rule of law, appellants rely mainly upon
the case of *Carter* v. *Ruddy,* 166 U. S. 493, in which it was held
that "constructive possession of a half a block of land, which is
cut up into separate and distinct lots, and so marked on the
ground, which are treated and held as distinct tracts, is not
shown by actual possession of some of the lots."

To the same effect is Wood on Limitations, 547, where it is said: "A distinction is made by many of the courts between lands laid out in distinct lots, and those which are not, and in the former case, it is held that an entry upon and possession of one lot, even though it is done under a conveyance which embraces several, cannot be extended by construction to other lots not actually occupied."

It is, however, not necessary for us to determine what effect the reinvestment of the Forrers with the actual possession of the McKernan tract in 1861, claiming title to the whole tract, had upon their right to or possession of Lot No. 3.

The Circuit Court declared in its decree that the possession of appellee and its predecessors was sufficient to bar the appellants, and obviously that finding was not based alone upon the reinvestment of the Forrers with title to the McKernan tract in 1861, for, in the pleadings and other proceedings in the cause, it appears that the Forrers, by deed of February 26, 1867, conveyed to William Milnes and his associates, under whom appellee claims, the 20,000 acres, or "Big Survey," as one tract or body of land, and the grantees occupied and used the property as had been done by the grantors.

But appellants contend that that deed was not sufficient to give color of title, and furnish a basis to support adversary possession. The description of the property conveyed is as follows:

"All that body of land in the counties of Rockingham and Page conveyed to the Daniel Forrer, Henry Forrer and Samuel Gibbons, by States Wilkins and by George F. Butler, trustee and guardian of the person and estate of Helen D. Hawsworth, being the sole surviving heir-at-law of Ann Smith, late Ann Wilkins (deceased), by deed dated the 10th day of October, 1836, and duly recorded, said land being in the Peaked Mountain, and is supposed to contain about twenty thousand acres (20,000), more or less, and is more particularly described in a survey made by Joseph Mauzy on the     day of December, 1841,

and of record in the clerk's office of the County Court of Rockingham county (the correctness of which survey is not relied on as some small parcels of land claimed by others may be embraced in the boundaries), but the quantity to which there is undoubted title is supposed to be twenty thousand acres at the least."

Color of title for the purpose of adverse possession under the statute of limitations as to land is that which has the semblance or appearance of title, legal or equitable, but which in fact is no title.

To constitute color of title it is not essential that the title under which the party claims should be a valid one. A claim asserted to property, under the provisions of a conveyance however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass title to the subject thereof, is strictly a claim under color of title, and one which will draw to the possession of the grantee the protection of the statute of limitations, other requisites of the statutes being complied with. Whenever this defence is set up, the idea of right is excluded; otherwise the statute of limitations would be of little use for protecting those who could otherwise show only an indefeasible title to the land. 1 Cyclopædia Law. & Proc., p. 1082-3, citing *Nelson* v. *Davidson* (Ill.) 52, Amer. St. Rep. 338; 31, L. R. A. 325; *Wright* v. *Mattison*, 18 How. (U. S.) 50, 15, L. Ed. 280.

"The only effect of claiming under a deed or paper title upon the question of adverse possession is to enlarge and extend the possession beyond the portion actually occupied to the whole lot described in the deed. To constitute an adverse possession of land entry and possession under claim of right or title is sufficient." 1 Cyclopædia L. & P., pp. 1084-5; *Lane* v. *Gould*, 10 Barb. 254; see also Hutchinson's Land Titles, 217, and authorities cited; Sedgwich & Wait T. & T. of L., 767.

It will be observed that in the deed from the Forrers to

Milnes and others of February 26, 1867, the 20,000 acres or "Big Survey," is conveyed as one tract, or body of land, described as the same, "conveyed to Daniel Forrer and Henry Forrer and Samuel Gibbons by States Wilkins, &c., by deed dated the 10th of October, 1836, and duly recorded."

It is true the deed to Milnes and others refers to a plat made by one Mauzy in December, 1841, but the correctness of that survey is not relied on, and the land is conveyed as the same conveyed by the deed of October 10, 1836, conceded to be sufficient to give the grantees color of title, &c.

"Any description which, unaided by extrinsic facts, satisfies the mind that the land adversely occupied is embraced within the description embraced in the deed, will, of course, be sufficient. So a description, though indefinite, is sufficient if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed. It is necessary, however, that the description be such that it can be rendered certain by such evidence." 1 Cyclopædia Law. & Proc., pp. 1090-91; *McRoberts* v. *McArthur*, 62 Minn. 310; *Davis* v. *Stroud*, 104 N. C. 484.

We are of opinion that the deed to Milnes and others of February 26, 1867, is clearly sufficient to give color of title to the whole of the 20,000 acre tract, and furnishes a basis to support the claim of adversary possession.

It is not pretended that the land after that conveyance ever lost its integrity as one tract, until the division made in this suit, nor that it was not acquired by appellee by successive conveyances from Milnes and others.

Eliminating the whole period from the beginning of the Forrers adverse possession in 1848 to the first day of January, 1869, the expiration of the stay law, Milnes and his associates, and those claiming under them, had held adverse possession of the land in controversy a period of over twenty-five years when

this suit was brought, in June, 1894, and appellants being under no disability, the decree holding appellee's title to the land to be indefeasible was inevitable.

It follows that the decree dismissing appellants' bill of review must be affirmed.

*Affirmed.*