## PERKINS LAND & LUMBER COMPANY v. WILLIAM IRVIN, Appellant.

### Division Two, December 22, 1906.

1. **LIMITATION: Color of Title: Unsealed Deed: Grantor's Title.** A deed acknowledged before a justice of the peace of another county and not sealed in accordance with the law in force at the time it was made, and not being otherwise sufficient to convey the title because the grantor had no title, is nevertheless a color of title, and if relying thereon defendant went into possession, claiming to be the owner, and in good faith occupied the land claiming title thereto by virtue of his color of title, continuous adverse possession for ten years is sufficient to defeat plaintiff's perfect legal title.

2. ——: ——: Claiming Thereunder: Question of Fact. Whether or not defendant occupied the land in good faith claiming title thereto under his color of title, is a question of fact, to be determined by the trial court sitting as a jury, from the evidence in the case.

3. ——: ——: ——: ——: The Evidence. Where there is evidence tending to show that defendant did not rely on his color of title as being the legal title, but claimed that the title was in the county and that he had as good a title as any one, and that while he claimed to own the land plaintiff went on to it and through his employees cut the timber thereon and defendant brought no action to enjoin him and none for damages for trespass, there was substantial evidence to support the court's finding that defendant was not in good faith claiming to own the land by virtue of his color of title.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*D. R. Cox, George Houck* and *C. L. Keaton* for appellant.

(1) If the evidence is that defendant has a perfect title by limitation, under color of title, the judgment is against the evidence presented at the trial. Gage v. Cantwell, 191 Mo. 705; Graton v. Land & Lumber Company, 189 Mo. 322; Marvin v. Elliott, 99 Mo. 622; Creech v. Childers, 156 Mo. 343. (2) The quitclaim deed is color of title. Hickman v. Link, 97 Mo. 488; Hamilton v. Boggess, 63 Mo. 244; Heinemann v. Bennett, 144 Mo. 117. (3) And possession under color of title of part of the land extends to all the land described in the instrument creating color of title, and when it continues for more than ten years, it vests the absolute and perfect title in the possessor under color of title. R. S. 1899, secs. 4262, 4266; Franklin v. Cunningham, 187 Mo. 184; Allen v. Mansfield, 108 Mo. 348; Harbison v. School District No. 1, 89 Mo. 186; Stevens v. Martin, 168 Mo. 410; Watts v. Donnell, 80 Mo. 196; Allen v.

Mansfield, 82 Mo. 693; Scannell v. Am. Soda Fountain Co., 161 Mo. 606; Nelson v. Brodhack, 44 Mo. 596.

*N. A. Mozley* for respondent.

Those claiming adversely under color of title must enter and occupy the land in good faith, claiming the whole tract, relying on the color of title as being the legal one. Gaines v. Saunders, 87 Mo. 557. And whether such adverse claimant relies in good faith on his color of title as being the legal one, is a question of fact for the jury. Gaines v. Saunders, supra. In this case the testimony of appellant himself and of witnesses offered by respondent tends to show that appellant did not rely on his color of title as being the legal title but insisted that the title was in Stoddard county, and that he had as good a title as any one else.

GANTT, J.—This action was instituted January 2, 1903, in the circuit court of Stoddard county. The petition contains two counts; one to quiet title to the north half of the southeast quarter of section 17, township 23, range 12, in Stoddard county, under the provisions of section 650, Revised Statutes 1899. The other count is in the usual form of ejectment for the same land. In his answer the defendant disclaimed any title or right to the northeast of the southeast of said section, but asserted title to the northwest of the southeast of said section under color of title with open, notorious, continuous, hostile and exclusive adverse possession for more than ten years. The action was tried to the court without a jury. The plaintiff introduced patents from the United States Government and the State of Missouri to the eighty acres to one Crumb and then deduced title by regular *mesne* conveyance to the plaintiff. The defendant to sustain the issues on his part offered in evidence a quitclaim deed from James Higginbotham, acknowledged before James Stewart, a jus-

tice of the peace within and for New Madrid county, Missouri, of date February 10, 1882, and recorded in Stoddard county, the 11th of December, 1893. He then offered in evidence facts showing that he had been in possession of the northwest quarter of the southeast quarter of section 17, since 1882, and had made improvements on the land. At the time he bought it there were four or five acres cleared and a little cabin on it. On cross-examination, he was asked: "When you bought the land from Higginbotham, he never claimed to own it, did he?" Ans. "I did not know anything about that, he sold me the land." Asked, "If he ever claimed to anybody that he owned the title in the land?" he answered, "I claim to own the best title there was." He was asked if he had not all the time contended that the land belonged to the county, and he answered that he would not say that it belonged to the county; he said he had four tax receipts and probably five. Says he did not tell Perkins he did not claim to own the land, and did not tell him it belonged to the county. Did not tell Perkins that he wanted the land, that he wanted to go over and buy the land from the county. Does not know what he said about that; that he did say that if he did not own the title, he wanted the right title. He stated that he went to Bloomfield when Mr. Wammack was agent for the county to arrange to enter the land in case the county won it, and he said to Wammack if he did not have the right title that he wanted it, but did not tell Wammack that he did not own the land; stated that he was acquainted with Mr. Reed and had a talk with him about the title of the land and claimed that he had as good a title as any one else had to it; he would not say that he had not told Mr. Reed that the county had a title, would not say positive, he might have said it, but he always claimed that he had as good a title as any one else; that he had cleared about ten acres; that Mr. Perkins cut tim-

ber off of the land in 1893, 1894 and 1895; that Perkins forced himself onto the land, went into the lot and cut out the timber; that he did not bring any action against Perkins for so doing. Perkins did not cut all the timber off of the land. He regarded Perkins as a trespasser.

John Carter testified to defendant's possession of the land for nineteen years, and his exercise of ownership over it. He testified to Perkins' men coming onto the land and cutting off the timber; that he notified Perkins to stay off and tried to keep him off of the land. On cross-examination this witness testified that to the best of his recollection there were twenty-five or thirty acres cleared; that the cleared land is along the center of the eighty acres and is on both forties. That defendant never told him he was going to enter it from the county; he claimed to own it. He, witness, did not object to Perkins' hands cutting outside of the pasture.

A. B. Perkins, for the plaintiff, testified that defendant never made any claim to witness about the title whatever; he did claim that he bought out the interest of a party out there. He made no other claim to the land at all whatever. He always claimed that the county owned it. That defendant often talked to him about the Stone-Perkins case, and said he wished I would succeed, that he thought the land belonged to the county; he always claimed that the county owned the land; that defendant never notified him not to cut the timber off of the land, that he, Perkins, quit cutting the timber about 1895, after cutting off all of the timber he wanted; that his hands did go into the lot to cut the timber and Irvin made no objection to him and that he knew nothing about objection being made by defendant to his men about cutting the timber; that he made no objection to Perkins himself at all. He testified further that he did not know that Irwin had any

deed to the land until a short time before the trial. There was talk among his men that Irvin was objecting to his cutting the timber in the horse pasture.

M. O. Reed, county surveyor, testified that he surveyed the land for Perkins. And says that the clearing is on the south half of the southeast quarter. Do not think there is any part of the northwest of the southeast cleared; that defendant talked to him and he gathered from what he said that the land would all come back to the county some time.

At the close of the evidence, the defendant asked the court to declare the law, and if the court found and believed from the evidence that the defendant had been in the open, notorious, continuous and adverse possession under claim and color of title to the land in controversy, for more than ten years prior to the commencement of this action, claiming said premises as his own, and exercising the usual acts of ownership over the same during said period, then the court would find the absolute fee simple title as vested in the defendant, and the court would find for the defendant, and the court gave said declaration of law. The court then found for the plaintiff and rendered judgment for plaintiff against the defendant. In due time the defendant filed his motion for new trial on the ground that the finding was against the evidence and the weight of the evidence, and the court erred in giving defendant's declaration of law and then finding against it. And the court erred in finding that the possession of the defendant under color of title did not set the Statute of Limitations in motion and did not bar the plaintiff.

I. The sole question presented on this appeal is whether the defendant acquired title to the land in question by adverse possession under color of title. It is conceded that the plaintiff has a perfect legal title to the forty acres, to-wit: the northwest quarter

of the southeast quarter of section 17, township 23, range 12, unless the defendant has acquired title thereto by his possession under color of title.   While the quit-claim deed from Higginbotham may be insufficient to convey the title, because it was not sealed, as required by the law at the time of the execution of this instrument, and because Higginbotham was not shown to have ever had any title to the land, and because the acknowledgment was taken by a justice of the peace of New Madrid county to lands lying in Stoddard county, still we think it was sufficient as a color of title and the sole question is as to whether defendant was occupying the land in good faith and claiming title thereto by virtue of his color of title.   [Gaines v. Saunders, 87 Mo. 557.]   And this was a question of fact, for the court, sitting as a jury, under the evidence in the case.

There was evidence tending to show that the defendant did not rely on his color of title as being legal title, but that he claimed that the title was in Stoddard county and he only had as good a title as any one else. There was also evidence tending to show that, while defendant was claiming that he owned the land, plaintiff went on the land, and had his employees cut the timber off of it, and that defendant took no action to enjoin him from so doing, nor brought any action against him for damages for trespassing.   Taking the whole evidence together, we think it was a question of fact for the court, sitting as a jury, to determine whether the defendant was, in good faith, claiming title to the land by virtue of his quit-claim deed from Higginbotham.   [Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440.]

The trial court having determined that issue against him under a proper declaration of law, this court will not interfere with that finding, and the judgment of the circuit court must be and is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.