Syllabus.

## Staunton.

YELLOW POPLAR LUMBER CO. v. JAMES THOMPSON'S HEIRS.

September 10, 1908.

Absent, Keith, P.

1. APPEAL AND ERROR—*Certification of Records—Ex Parte Affidavit of Clerk.*—The certificate of the clerk of the trial court to a record brought to this court, made up and signed by him, is a verity as to the clerk, and cannot be impeached, modified or changed by the subsequent *ex parte* affidavit of said clerk. Furthermore, Rule I of this court provides that the court will not read any affidavit in support of, or opposition to any motion hereafter made to the court, unless reasonable notice in writing be given to the opposing party of the time and place of taking the same.

2. TAXATION—*Assessment—Misdescription of Owner—Effect—Question for Jury.*—Whether or not the mistake of a commissioner of the revenue in assessing a tract of land in the name of "Jane" Thompson and noting under the head of "Remarks" "not James T." was material, and sufficient to mislead James Thompson, the owner of the land in whose name it had been previously assessed, and to the prejudice of his rights, are questions of fact for the jury and not for the court.

3. ADVERSE POSSESSION—*Color of Title—Invalid Tax Deed.*—An invalid tax deed, which purports to convey land, and sufficiently describes it to render identification possible, gives color of title to the land granted.

4. ADVERSE POSSESSION—*Tax Deed—Possession—When Limitation Begins.*—Possession under a tax deed for the statutory period may give title as against the owner, but the statute begins to run only from the date of possession under the deed, and the power to issue the deed does not arise until after the expiration of the period allowed for redemption.

5. INSTRUCTIONS—*Erroneous Ruling—When Harmless.*—The rulings of the trial court on instructions are immaterial when, upon the facts proved, there could not have been rightly found a verdict different from that which was rendered.

6. Adverse Possession—*Severance of Land and Timber—Possession of Land Only.*—If the owner of land conveys the growing trees thereon to one person, and on the same day conveys the surface of the land to another, there is a severance of estate in the trees and the surface, and the subsequent possession of the surface by the grantee thereof is not possession of the trees. It is immaterial that the grantor covenanted that he would "protect and take care of said timber, as long as it may remain upon said premises." This is a mere personal covenant of the grantor. There is a want of privity between the two grantees, and privity must be shown before possession can be tacked.

7. Adverse Possession—*Requisites.*—Adverse possession must be actual, exclusive, open and notorious, accompanied by a *bona fide* claim of title against all other persons, and must be continued for the period of the statutory bar. A mere naked possession, without claim of right, no matter how long, never ripens into a good title, but is regarded as being held for the benefit of the true owner.

8. Growing Trees—*Real Estate—Severing Title from Surface.*—Growing trees are real estate, and the owner of land and the trees growing thereon may by deed convey the trees apart from the land, and create a separate and distinct estate in them from the estate in the land on which they grow.

9. Growing Trees—*Severance of Title from Surface—Possession of Surface.*—Where there has been a severance of estate in the surface of land and the timber standing thereon, the possession of the standing timber is not presumably in the owner or claimant in possession of the surface.

10. Adverse Possession—*Severance of Title of Surface and Growing Trees—Tacking One Adverse Possession to Another.*—Where there has been a severance of title of the surface of land, and of the trees growing thereon, if it be conceded that there was such adverse possession of the trees as would ripen into title if held for the statutory period, still the possession of the trees after the severance of title as aforesaid cannot be added to the possession of the owner of the surface, and those under whom he claims, so as to complete the period of the statutory bar to a recovery of the trees by the true owner thereof.

Error to a judgment of the Circuit Court of Buchanan county in an action of ejectment. Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Vicars & Peery, Finney & Stinson, C. C. Burns* and *A. A. Skeen,* for the plaintiff in error.

*Geo. W. St. Clair* and *William H. Werth,* for the defendants in error.

Cardwell, J., delivered the opinion of the court.

This action of ejectment was brought by the heirs of James Thompson, deceased, and another, against the Yellow Poplar Lumber Company and one Levi Osborn, to recover the possession of 150 acres of land, situated in Buchanan county, Virginia; the defendant, the Yellow Poplar Company, being the claimant of 279 marked and branded poplar, ash and cucumber trees, standing and growing on said land, and Levi Osborn claiming the ownership and possession of the surface of the land.

At the trial there was a verdict for the plaintiffs against the Yellow Poplar Company for the standing trees in question, and in favor of the other defendant, Levi Osborn, for the land, which verdict in favor of Osborn was set aside, but judgment entered thereon against the Yellow Poplar Company; and to that judgment this writ of error was awarded.

During the progress of the trial plaintiff in error excepted to various rulings and opinions of the court, and was, with the consent of all parties, allowed thirty days from the rising of the court to present proper bills of exception. The bills of exception were, within the time fixed signed and sealed by the judge, and appear in the record certified by the clerk as "a true transcript of the record and proceedings" in the cause; but counsel for defendants in error point out that this certificate of the clerk bears date the "30th day of April, 1907," while the bills of exception appear to have signed by the judge May 11, 1907; and for this reason we are asked to dismiss the writ of error as improvidently awarded.

Section 3385 of the Code provides, that any bill of exception may be tendered to the judge, and signed by him, either during the term at which the opinion of the court, to which exception is taken, is rendered, or in vacation within thirty days after the end of such term, or at such other time as the parties, by consent entered of record, may agree upon, and any bill of exception so tendered and signed by the judge as aforesaid, either in term time or vacation, shall be a part of the record of the case; and the order of the court in this case refusing to set aside the verdict against plaintiff in error says: "And it is ordered by the court, with the consent of the parties, that the defendants be and they are hereby allowed thirty days from the rising of this court to present proper bills of exception, which when done and the same are signed and sealed, are hereby made a part of the record in this case."

It is suggested in the brief of counsel for defendants in error that the record certified by the clerk "does not, as a matter of fact, contain all the evidence introduced before the court below;" but it not only appears from the printed record that the requirements of sec. 3385 *supra* were literally complied with, but an inspection of the original file of the court papers in the case, brought up for our inspection, discloses that the record was made up and copied by the clerk for certification to this court pursuant to an agreement between counsel for the respective litigants, and there is nothing contained therein or omitted therefrom that was not so agreed on.

True, counsel for defendants in error produce in their printed brief what purports to be two affidavits made by the clerk of the court below, the one to the effect that the evidence and instructions in the case, as well as the clerk's certificate thereto, appearing in the printed record, were all written up and forwarded to counsel for plaintiff in error "before any bills of exception were ever signed by the judge, or at least no such bills had then (or have since) come to my office," etc.; and the other to the effect that the bills of exception signed by the

judge, of date May 11, 1907, were on May 1, 1907, presented and filed in the office of the clerk by counsel for plaintiff in error, and that the same were never before in his office, etc.; but this same affiant gives to counsel for plaintiff in error, a copy of which is also produced here, an affidavit to the effect that the record in the case was made up, copied and certified in accordance with the practice in the Circuit Court of Buchanan county; that the evidence in the case to be certified by the clerk was agreed to by the attorneys of record, and "the record with the agreed evidence was copied as I was directed and certified to by me, the attorneys having agreed to same and notice being waived."

We have here a demonstration of the wisdom of the rule adhered to by this court, that the certificate of the clerk of the trial court to the record brought to this court, made up and signed by him, is a verity as to the clerk, and cannot be impeached, modified or changed in the manner attempted in this case. Rule I of this court provides, that the court will not read any affidavit in support of, or opposition to, any motion hereafter made to the court, unless reasonable notice in writing be given to the opposing party of the time and place of taking the same  *  *  *. In this case the notice required by that rule was not given, but the motion to dismiss is made in a printed brief, filed but a few days before the case is called for hearing in this court, and as a part of that brief the *ex parte* affidavit of the clerk, who himself, as he admits, certified the record, is alone relied on to support the motion. Therefore, we are of opinion that the contention that this writ of error should be dismissed is wholly without merit.

James Thompson, a non-resident of Virginia, who died intestate in 1876, was the owner of the 150 acres of land which, with the 279 standing trees thereon, form the subject of controversy in this suit, and which descended at his death to his heirs at law. They conveyed one moiety thereof to Martha Graham, who with said heirs instituted the suit.

It is too plain to admit of discussion, if plaintiff in error does not in fact intend to admit as much, that the defendants in error established at the trial a good legal title to the land, and, of course, to the standing trees thereon, and had the right to recover the land including the standing trees upon it, unless this right was lost by reason of a tax deed under which plaintiff in error claims, made by the clerk of the County Court of Buchanan county to one S. M. B. Coulling, bearing date July 18, 1893, the sale of the land for the payment of the taxes due thereon for the year 1886, having been made February 21, 1888, and the plat of the land and certificate of survey ordered by the court, recorded as required by law April 1, 1892.

It appears from the land books of Buchanan county that this land was assessed for taxes in the name of James T. Thompson for 1884 and 1885; in the name of Jane Thompson for 1886 to 1890, inclusive; in the name of Jane or James Thompson for 1891; and in the name of S. M. B. Coulling and those claiming under him for the years 1892 to 1906, inclusive. It further appears in the certificate of the evidence, that in the column of the land books of 1886 and 1887, headed "remarks," the following note appears: "not James T."; that the parties agreed and their counsel admitted that the land assessed to the above-named parties was the identical land in controversy and the same land assessed to "James Thompson" for 1884 and 1885. It is not claimed that the taxes were paid on the land for 1886, the year for which it was sold for taxes and bought by Coulling, nor that the land was ever assessed against James Thompson or those claiming under him other than as shown by the certificate made from the land books above referred to.

It will be readily observed, therefore, that the defense set up by plaintiff in error at the trial was adversary possession, under color of title, for the statutory period of ten years, the contention being that the tax deed to Coulling afforded him, and those claiming under him, color of title which by lapse of time ripened into a perfect title before this suit was brought; and

that, so far as plaintiff in error was concerned, if recovery by the plaintiffs (defendant in error here) of the land itself was barred, they were also barred of a recovery of the 279 standing trees thereon, claimed by plaintiff in error; but the learned judge below instructed the jury that the tax deed in question passed no title for the land in the declaration described, and this ruling is made the basis of plaintiff in error's first assignment of error.

The case of *Stevenson* v. *Henkle,* 100 Va. 595, 42 S. E. 672, involved a mistake in the name of the land owner whose lands were sold for delinquent taxes, similar to the case in judgment, and the opinion of the court says: "The underlying principle in such cases is, that a person whose property is liable to assessment for taxes shall not be permitted to evade payment of his just proportion of the public burdens by any errors, omissions, or irregularities that do not prejudice his rights."

The contention that only such right or title as was vested in Jane Thompson at the beginning of the year 1886 passed under the tax deed cannot avail defendants in error, if the mistake of the commissioner in writing *Jane* for *James* and the note he made, "not James T.", under the head of "remarks," did not mislead James Thompson; but whether or not the assessment of the land by the commissioner, as listed on his books for the year 1886, was sufficient to mislead James Thompson and to the prejudice of his rights, was a question for the jury and not for the court.

It is said by Freeman, in a note to *Schooler* v. *Asherst,* 13 Am. Dec. 233: "The doctrine of *idem sonans* has been much enlarged by modern decisions to conform to the growing rule, that a variance to be material must be such a one as misled the opposite party to his prejudice."

It has been held by this court in several criminal cases, that whether the name in the indictment is *idem sonans* with the true name of the person upon whom the offense was committed

is a question for the jury and not for the court. *Taylor's Case,* 20 Gratt. 825; *Pitsnogle's Case,* 91 Va. 808, 22 S. E. 351, 50 Am. St. Rep. 867.

In the first-named case, Moncure, P., says: "But the question is one for the jury, and not for the court, which cannot instruct the jury, as matter of law, that any two names are or are not of the same sound."

And in the second-named case the opinion by Keith, P., says: " * · * * the modern and approved practice is to submit the question to a jury whenever there is opportunity to do so, and where the correct sound appears at all doubtful or dependent upon particular circumstances."

In this case the court in effect instructed the jury that as a matter of law the names of Jane and James Thompson were not *idem sonans,* and, therefore, took from the jury the determination of whether or not the mistake of the commissioner in assessing the land in the name of Jane Thompson, and noting under the head of "remarks," "not James T.," was immaterial. This, for the reason stated, was error; and it was also error to refuse plaintiff in error's instruction No. 11, which sought to submit to the jury for determination, whether or not the mistake in the assessment was immaterial.

We are further of opinion that the trial court erred in refusing instruction No. 1, asked for plaintiff in error, which in effect told the jury that a deed for land sold for delinquent taxes was sufficient to carry to the grantee color of title to the land conveyed, and if the required conditions as to adverse possession were shown to have existed and continued for the period of the statutory bar, the defendants in error were not entitled to recover.

While there is considerable conflict as well as a marked confusion in the authorities as to what are the requisites of an instrument, in order that it may have the effect of conferring color of title, it appears to be a generally accepted rule, that if the instrument under which the claimant enters upon the land

is regular upon its face, this will suffice to give color of title, and he is not ordinarily required to go beyond the writing to see whether it actually passes title or is in fact void; and in *Nowlin* v. *Reynolds,* 25 Gratt. 137, the opinion of this court says, that it is not necessary to constitute an adverse possession that there should be a rightful title.

With respect to a tax deed, the rule is stated in 1 Cyc. 1095, citing decisions of the appellate courts in a number of States, to be, that it may give color of title although informal and defective, or even when absolutely void, unless the land in controversy is not described therein or is so insufficiently described as to render identification impossible. "Whatever may be the source of the invalidity of the deed, if it purports to convey land and in form passes what purports to be the title, it gives color of title."

The weight of authority is, that "A tax deed based on a void tax sale is color." *Osciola L. Co.* v. *Chicago M. & L. Co.,* 84 Ark. 1, 103 S. W. 609; *Gilbert* v. *So. L. & T. Co.,* 53 Fla. 319, 43 South. 754; *Perkins Land & L. Co.* v. *Irvin,* 200 Mo. 485, 98 S. W. 580; *Hoyle* v. *Mann,* 144 Ala. 516, 41 South. 835; *Sharp* v. *S. F. Co.,* 100 Va. 27, 40 S. E. 103; 6 Current Law 1654.

In this case the tax deed to Coulling is formal and the land it purports to convey is sufficiently described, at least, to render identification possible. 1 Cyc. 1082, 1085-1086.

But while possession by the holder of the tax title for the period prescribed in the statutes may give title and bar an action of recovery by the owner, the statutes begin to run only from the date of the possession under the deed, and the power to issue the deed does not arise until after the expiration of the period allowed for redemption. Current Law, *supra,* and note to *Griffin* v. *Jackson,* 9 Am. & Eng. Anno. Cas. 74-76; 1 Am. & Eng. Enc. L, 850, 851, 852.

In the view we take of this case, however, while the court below erred in the respects above discussed, the errors are to be

considered as harmless, for the reason that they could not have prejudiced the rights of plaintiff in error. In other words, notwithstanding the erroneous instructions given to the jury, or refused, upon the facts proved there could not have been rightly found a verdict different from that rendered by the jury in favor of the defendants in error for the 279 trees involved.

Although the tax deed to Coulling was sufficient to confer color of title upon him and those claiming under him, it conferred color of title only from the date of its execution, July 18, 1893, and as to adverse possession under this color of title the evidence is, that the land was and remained wild, uncleared, unenclosed and unoccupied by any one until February, 1896, when a log cabin was put on the land, which was occupied by a tenant for one or two years, and about three acres of the land cleared; that this tenant then moved out and the cabin was unoccupied for several years. Then it was occupied by another· tenant for about one year. Then he moved out and the cabin was burned down. It was about this time that Levi Osborn took a deed for the land from Geo. W. Osborn, who had theretofore obtained a conveyance therefor from Waldron, a grantee of Coulling. While the house on the land was down, Levi Osborn sold his adjoining land and moved to another county, and when he moved away there had been no one living on the land for two years; and it was two years later when the house was rebuilt and occupied by a tenant, and after the property had been vacant for about four years. According to the testimony of Levi Osborn himself, and another witness introduced by plaintiff in error, there were never but three persons who lived on the land, the first going thereon in 1896, and there were intervals of from two to four years between their respective occupancy. True, there is evidence as to a parol contract with Coulling, under which Waldron gave Levi Osborn in 1892 or 1893, a ten-year lease, making the latter, who lived on the adjoining land, somewhat of a caretaker to watch over the land, and Osborn ranged cattle on and cut some wood from

the land, as did others; but independently of these facts, if the acts of ownership done by Levi Osborn or those under whom he claimed the land in question were sufficient to constitute in him and them adversary possession under color of title, which might have ripened into a good title by being continued for the statutory period of limitation, such adversary possession could not avail plaintiff in error, unless it could tack on its adversary possession of the trees in question to that of Levi Osborn of the land itself. The adversary possession of the land by Coulling or those claiming under him, if such there was, could not have begun before the date of the tax deed, May 19, 1893, and on May 27, 1902, Waldron, Coulling's grantee, by separate deeds, conveyed the land to Geo. W. Osborn, and the 279 standing trees here in question to plaintiff in error, which conveyances were before adversary possession of the land under Coulling's tax deed could possibly have ripened into a good title. Geo. W. Osborn, by deed of January 4, 1904, conveyed, with covenants of general warranty the land to Levi Osborn, and the ruling of the trial court that the conveyance of the 279 standing trees to plaintiff in error was a severance of estate in the trees from that of the estate in the surface of the land, and that any possession that Levi Osborn and those under whom he claims had after that time was not possession of the said trees, is assigned as error.

In this ruling there is no error. The provisions in the conveyance of the trees to plaintiff in error by which the grantor, Waldron, agreed that the grantee might remove the trees within such time as it might choose, and that he, Waldron, would "protect and take care of said timber as long as it may remain upon said premises," could not constitute plaintiff in error and Geo. W. Osborn, who took from Waldron on the same day a separate conveyance of the land, privies in estate, for the one acquired independently of the other, though from the same grantor, an entirely different and separate estate with no privity in holding. The agreement or covenant to take care of

the trees until they were removed was but a personal covenant binding alone on the grantor, Waldron..

"Privity must be shown before possession can be tacked." 9 C. L. 39, and cases cited in note.

The possession of Geo. W. Osborn, and Levi Osborn claiming under him, of the land was not and could not have been possession of the 279 trees conveyed to plaintiff in error, under color or claim of title to the trees.

"Adversary possession must be actual, exclusive, open and notorious, accompanied by a *bona fide* claim of title against that of all other persons, and it must be continued for the period of the statutory bar. A mere naked possession, without claim of right, no matter how long, never ripens into a good title, but is regarded as being held for the benefit of the true owner." *Creekmur* v. *Creekmur,* 75 Va. 430.

Whether marking these 279 trees with the brand or figure "$\wedge$," as stated in the deed to plaintiff in error, or what would be "actual, visible, exclusive, hostile and continuous" possession under a *bona fide* claim of title to standing trees which have been severed in title from the land itself, we are not called upon to determine in this case. True, the trees, unlike the minerals underlying the surface of the land, draw their support, life, and health from the soil until removed, and so long as they stand upon the land they are real estate—*Stuart* v. *Pennis,* 91 Va. 688, 22 S. E. 507—but it is inconceivable that they may not by deed be created, as may minerals in or under the surface of the land, a separate and distinct estate from the estate in the land. *Va. C. & I. Co.* v. *Kelly,* 92 Va 332, 24 S. E. 1020; *Interstate Co.* v. *Clintwood Coal &c. Co.,* 105 Va.. 574, 54 S. E. 593.

"It is a general presumption that one who has the possession of the surface of the land has the possession of the sub-soil also. But when, by conveyance or reservation, a separation has been made of the ownership of the surface of the land from that of the underground minerals, the owner of the former can acquire

no title to the latter by his exclusive and continued enjoyment of the surface; nor does the owner of the minerals lose his right or possession by any length of non-usage. He must be disseized to lose his right, and there can be no disseizure by an act which does not actually take the minerals out of his possession." 1 Cyc. 994-5.

"Adverse possession of the surface of the land does not necessarily include possession of the minerals below it, where the title to the latter has been severed by deed from that of the surface." 1 Am. & Eng. Enc. L. 875, and cases cited in note 1.

We find nowhere discussed in the authorities the question, whether or not there is a general presumption that one who has the possession of the surface of the land has possession of the standing timber thereon also, where by a conveyance or reservation a separation has been made of the ownership of the surface of the land from that of the standing timber; but by analogy of the authorities with respect to underlying minerals, which by conveyance or reservation carries the ownership of the surface of the land from that of the underground minerals, the possession of standing timber, where by conveyance or reservation a separation has been made of the ownership of the surface of the land from that of the timber standing thereon, is not presumably in the owner or claimant in possession of the surface.

In the case here, conceding that plaintiff in error had, from and after its deed from Waldron of May 27, 1902, an adversary possession of the 279 trees in question, which might have ripened into a perfect title if continued for the period of the statutory bar, that adversary possession of the trees could not be tacked on to the possession of Geo. W. Osborn, and those under whom he claims, of the land, so as to complete the period of the statutory bar to a recovery of the trees by the true owners before this action was brought. The possession of the land, including the standing trees thereon, ceased from and after May 27, 1902, when the surface of the land was conveyed to George W. Osborn, and the ownership of the standing trees

thereon, here in question, to plaintiff in error, and Osborn's possession after taking his deed from Waldron was that of the surface of the land only.

The contention of plaintiff in error that Levi Osborn, under his tenure of the land from Waldron, held possession of the timber until 1904, the date of his deed from George Osborn, and after plaintiff in error's adverse possession had ripened into perfect title, is wholly without force. As already pointed out, the deed of May 27, 1902, was a severance of the title to the timber trees and created a separate and distinct freehold in the timber from the surface of the land, and the owner of the surface was not in possession of the timber for plaintiff in error, but only of the surface of the land; and there is no evidence in the record going to prove that there were any provisions in the said lease held by Levi Osborn from Waldron which deprived the latter of the right to create, as he did by deed of May 27, 1902, in plaintiff in error, a separate and distinct estate in the 279 trees; therefore, any subsequent possession of Osborn, if any he had, of the surface of the land could not inure to the benefit of plaintiff in error as to the trees it is claiming.

We are of opinion, upon the whole case, that the judgment of the circuit court in favor of the defendant in error for the 279 trees involved is right, and, therefore, it is affirmed.

*Affirmed.*