# Richmond

## BRIDGEWATER MANUFACTURING COMPANY V. FUNKHOUSER, COMMISSIONER AND OTHERS.

### · November 20, 1913.

1. TAXATION—*Assessments—Irregularities.*—Technical objections to the time and method of assessing property for taxation are · unavailing to prevent a proper assessment. A person whose property is liable to assessment for taxes will not be permitted to evade the payment of his proportion of the public burden by any errors, omissions or irregularities that do not prejudice his rights.

2. TAXATION—*Capital of a Miller.*—Capital employed in the business of a miller is taxable under schedule C, section 8, of the tax bill of this State.

3. STATUTES—*Construction—Use of Same Word—Tax Bill—"Capital."*— It is a rule of construction that when the same word is used in different parts of the same statute the presumption is that it was used in the same sense throughout the statute, unless a contrary intention clearly appears. Applying this rule to the tax bill of this State, the word "capital" as defined in sub-section 4 of section 8 was intended to apply also to "capital" as used in the preceding sub-sections 2 and 3.

4. TAXATION—*"Capital"—Corporations—Uniform Taxation.*—The word "capital" as defined in sub-section 4, above mentioned, applies as well to corporations as to individuals conducting the same business. Any discrimination between private persons and corporations in this respect would violate the constitutional provision that "all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects."

5. TAXATION—*"Capital"—What Constitutes—Borrowed Money as Capital.*—The tax laws of this State impose a tax on "moneys and credits actively used and employed in carrying on the trade or business." If so actively used and employed, it can make no difference whether capital or part of it was borrowed or not. It is none the less capital of the user, and employed for his profit and at his risk. While the legislature might have authorized the deduction of borrowed money from the amount of

capital to be returned for taxation, it has not done so, and such money is to be included in the capital returned for taxation. The capital stock of a company must be clearly distinguished from the amount of capital invested in its business.

Error to a judgment of the Circuit Court of Rockingham county on a motion to correct an erroneous assessment for taxes. Application refused. Applicant assigns error.

*Affirmed.*

The opinion states the case.

*Conrad & Conrad,* for the plaintiff in error.

*Samuel W. Williams, Attorney General,* and *Richard B. Davis, Assistant Attorney General,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This proceeding was instituted in the circuit court of Rockingham county by the Bridgewater Manufacturing Company to have corrected an alleged erroneous assessment of taxes imposed upon it, which relief was denied by the circuit court.

The record shows that the complainant is a corporation, with its chief office and place of business located in Bridgewater, Rockingham county. The chief business of the company is the operation of two flour mills and one woolen mill at Bridgewater. This company paid for the year 1912 the assessments collectable through the Corporation Commission, but did not report anything and was not assessed with anything on the personal property assessment books for that year. At the November term of the circuit court, a special grand jury was impaneled to examine the books of assessment as required by section 578 of the Code of

1904. Among the persons summoned before the grand jury was the manager of the complainant company, who informed the jury that the total running capital of the company invested in its business as of July 1, 1912, was $16,-703; that of this sum $14,000 was borrowed money; that the company could not tell what amount it had in its business as running capital as of February 1, 1912, but that it was not less than it was on July 1, 1912. Thereupon the grand jury directed the commissioner of the revenue for Ashby district, in which the company and its business was located, to assess the company for taxation with $16,703, the amount it had in its business as running capital during the year 1912. The aggregate tax imposed upon this assessment was $229.64, being $58.45 for State purposes, $66.81 for county purposes, and $104.38 for district purposes.

The complainants make several technical objections to the time and method of this assessment, insisting that it was not made according to law. These objections are without merit. The underlying principle in such cases is that a person whose property is liable to assessment for taxes shall not be permitted to evade payment of his just proportion of the public burden by any errors, omissions or irregularities that do not prejudice his rights. *Stevenson* v. *Henkle,* 100 Va. 591, 595, 42 S. E. 672; *Yellow Poplar Co.* v. *Thompson,* 108 Va. 612, 62 S. E. 358; *Coles* v. *Jamerson,* 112 Va. 311, 71 S. E. 618.

It is clear from the record that the objections are not well taken and that the complainant suffered no prejudice from the method of assessing the taxes it now seeks to avoid.

There is no foundation for the contention that the law does not tax the capital employed in the business of a miller or other manufacturer. That such capital is taxed clearly appears from Schedule C, section 8, of the tax bill. Code, p. 2193.

Upon the merits of this controversy, the complainant contends that under sub-section 3, of section 8, Schedule C of the tax bill, Code, p. 2193, the capital taxed is the original capital paid in by the shareholders on the purchase of their stock, less the amount invested in real estate and the money borrowed by the company to be used in conducting its business. This position cannot be sustained. The nominal capitalization of the company which is divided into shares and sold or distributed to shareholders does not necessarily bear any relation or proportion to the actual amount of capital used in the business. A corporation may and often is doing an enormous business with a vast capital employed, although its stockholders have paid in little or nothing. The capital stock of a company must be clearly distinguished from the amount of capital invested in its business, or the amount of property possessed by it. 1 Cook on Corporations, sec. 8.

The third and fourth sub-sections of section 8, Schedule C, of the tax bill, are as follows:

"Third.—Capital of incorporated joint stock companies not otherwise taxed; and when all of such capital is taxed by the State of Virginia, the shares of the stock in the hands of individual shareholders shall not be further taxed for State purposes; but real estate belonging to such companies shall not be held to be capital, but shall be listed and taxed as property, and not as capital.

"Fourth.—Capital of individuals invested, used or employed in any trade or business not otherwise taxed. Moneys and credits actively used and employed in carrying on the trade or business; materials, goods, wares and merchandise on hand, and all solvent bonds, demands, or claims made or contracted in the course of business during the preceding year, shall be held to be capital in such trade or business, and shall not be taxed otherwise than as such capital; but real estate shall not be listed as such capital, but shall be assessed and taxed as other specific property."

Sub-sections 2, 3 and 4 of section 8 of the tax bill each deals with capital, sub-section 4 defining the term capital to be investments "used or employed in any trade or business not otherwise taxed. Moneys and credits actively used and employed in carrying on the trade or business; materials, goods, wares and merchandise on hand, and all solvent bonds, demands or claims made or contracted in the course of business, during the preceding year, shall be held to be capital in such trade or business, and shall not be taxed otherwise than as such capital; but real estate shall not be listed as such capital, but shall be assessed and taxed as other specific property."

The terms *capital* is found in two other sections of the tax bill—that relating to merchants' licenses (Code, p. 2220), and in the section relating to oyster-packers' licenses (Code, p. 2222)—and in each of these sections the foregoing definition of capital is repeated. Sub-sections 2, 3 and 4 of section 8 of the tax bill appear together, and in the last the term *capital,* which is used in each, is defined. There being nothing in the context to show a contrary intention, it would seem to be clear that the meaning of *capital,* as defined in sub-section 4, was intended to apply also to capital as used in the preceding sub-sections 2 and 3.

It is a rule of construction that when the same word is used in different parts of the same statute, the presumption is that it was used in the same sense throughout the statute, unless a contrary intention clearly appears. *Postal Tel. Co.* v. *Farmville, &c.,* 96 Va. 661, 664, 32 S. E. 468.

To say that the meaning of "capital," as defined in sub-section 4, applied only to individuals would be to hold that the General Assembly intended to impose a less tax on corporations than on individuals for carrying on the same business. The provisions of the tax bill under consideration furnish no ground for such a conclusion. There is no

difference between a business as conducted by a corporation and the same business as conducted by an individual that would warrant any different meaning to be given to the term capital in the two cases. Any such discrimination would be a violation of the requirement of the Constitution, that "all property, except as hereinafter provided, shall be taxed; all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects." Va. Const., Art. 13, sec. 168.

It seems clear that the legislature intended that the meaning given by it to the term *capital,* in sub-section 4, should apply to corporations as well as to individuals, and that it did not mean to limit the taxable capital of corporations to the original input of the shareholders on the purchase of their stock.

Both sub-sections 3 and 4 of section 8 of the tax bill provide, that real estate shall not be held to be capital, but shall be listed and taxed as property. There is, however, no warrant in the statutes for the contention that, in arriving at the subject of taxation, the complainant is only liable for taxes upon the net balance of capital after deducting the money borrowed by the company to be employed in conducting its business. Whether or not such a deduction is permissible rests entirely with the legislature, and is to be determined by reference to the revenue laws. We find but one instance in which by express provision of the statute the deduction of debts is allowed. This occurs in Schedule C, section 8, of the tax bill (Code, pp. 2193-4), where, in taxing bonds, notes and other evidences of debt, it is provided that there shall be deducted from such choses in action certain indebtedness of the taxpayer. In the section relating to merchants' licenses (Code, p. 2220), there might perhaps be an implied allowance arising from the use of the word "net." Neither of these instances have any application, however, to the case

31

under consideration, as to which the legislature has made no provision for any deduction whatever. Ordinarily and in common parlance, the word "capital," when used in reference to commerce or trade, including manufacturing, signifies the money and other property adventured in the business. 6 Cyc. 347; 1 Words & Phrases, 954. As said by the learned judge of the circuit court, when used in this sense, it can make no difference whether the capital, or part of it, is borrowed or not. It is none the less capital of the user, and employed for his profit and at his risk. The statute, as already seen, defines what shall constitute *capital* in any trade or business, and provides that the specifications made shall not be taxed otherwise than as capital. We would be no more justified in reading into the statute a deduction of indebtedness against these specifications constituting capital than we would be in making a like allowance against the value of land or chattel property.

It is illustrated by the evidence in the present case that large business enterprises are often carried on chiefly, and sometimes wholly, with a borrowed working capital, and if this indebtedness, whether temporary or permanent, is to be deducted in ascertaining the capital for taxation, such enterprises would escape their just share of the burdens of government, though they were actually earning large profits. There is no reason why such a discrimination should be made in favor of manufacturers and others falling in the same class, and there is nothing in the statutes to justify the conclusion that any such favor was intended. The law-making power alone must determine whether such an allowance shall be made or not in ascertaining the just amount of taxable property, and, if made, against what forms of property the deduction shall be allowed and to what extent. As against the capital employed by the complainant in its business, the law-making power has pro-

vided for no deduction of its indebtedness, and the idea that it intended to do so is negatived by the fact that, in the same statute, a deduction is expressly allowed in taxing another and different form of property. *Expressio unius exclusio alterius est.*

There is no error in the judgment complained of, and it is affirmed.

*Affirmed.*