## Staunton.

## ROBERTSON, COMMISSIONER V. COMMONWEALTH.

September 16, 1920.

1. TAXATION—*Judicial Sales—Purchase-Money Notes — Assessment at Face Value—Deduction for Credits to Purchaser—Case at Bar.*—At a judicial sale a purchaser made a cash payment and gave notes for the deferred payments, aggregating $392,000. The purchaser was solvent, and the notes were worth their face value. In the decree of sale it was provided that, after the payment of certain taxes, costs, etc., the deferred purchase-money notes should be applied by the special commissioner of sale to the payment of debts in the following order: (1) To the payment of a lien; (2) to the payment of receiver's debts; (3) to the payment of certain coupons; and (4) to the payment of certain bonds; and the decree provided that as to any class of liens, except the last, instead of paying cash, the purchaser might apply any receipts or other evidences of indebtedness which he might hold against such class of liens.

   *Held:* That the deferred purchase-money notes were assessable for taxation at their face value, and no deductions could be allowed for the payment by the purchaser on the particular lien, where it appeared that the title to this debt was not acquired until after the date of the assessment, or for debts of the second and third classes, above mentioned, held by him which the purchaser intended to apply instead of cash payment to its notes but had not so applied at the date of the assessment.

2. TAXATION—*Judicial Sales—Purchase-Money Notes — Assessment at Face Value—Deduction for Credits to Purchaser—Case at Bar.*—The tax in question was assessed in pursuance of Acts 1916, p. 828, Acts 1915, p. 160, 162, and Code 1904 sec. 492a. Whether or not any deductions should be made is to be determined from reading the statutes. If they authorize the deductions they should be made; otherwise not. The fact that an individual assessed under class 1 of section 8, schedule C, is allowed to deduct his debts from the value of his assets, or that debts are to be deducted in ascertaining "Net Assets and

Capital" of corporations for taxation, furnishes no reason for making a similar deduction on property assessed under class 3 of schedule C.

3. TAXATION—*Choses in Action Under Control of Court—Offsets.*—In ascertaining the value of choses in action under the control of the court, for the purpose of taxation, it is not proper to deduct offsets which have not been ascertained and allowed.

4. TAXATION—*Judicial Sales—Purchase-Money Notes.*—The mere fact that the purchaser at a judicial sale, who gave notes for the deferred payments, would be entitled to a credit on the notes "in the final settlement of the estate," could not justify the credit at an earlier date, and until the credit on the purchase-money notes was actually allowed they were property taxable at their face value, and the subsequent allowance of the credit did not relate back so as to affect the amount of the assessment for taxation which was proper at the time it was made.

Error to a judgment of the Circuit Court of Wise county on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*E. M. Fulton, W. H. Rouse* and *Morison, Morison & Robertson,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General,* and *J. D. Hank, Jr., Assistant Attorney-General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

[1, 2] At a judicial sale of the properties of the Empire Coal Land Corporation made September 11, 1916, the Interstate Coal Company, of which George L. Carter owned all the stock, became the purchaser thereof at the price of four hundred and twenty-five thousand dollars. A large cash

payment was made, and it gave five notes for the deferred payments of $78,400.00 each, payable respectively at one, two, three, four and five years after date, aggregating $392,-000.00. That the maker of these notes was solvent, and that they were worth their face value is not questioned. In the decree of sale it was provided that, after the payment of certain taxes, costs, etc., the proceeds of the deferred purchase money notes should be applied by the special commissioner of sale to the payment of debts in the following order of priority, to-wit: (1) to the payment of principal and interest of the McHarg lien, (2) to the payment of receiver's debts, (3) to the payment of certain coupons, and (4) to the payment *pro rata* of certain bonds of the Empire Coal Land Corporation. The decree further provided "that as to any class liens, instead of paying cash thereon, the purchaser may apply, ratably, any receipts or other evidences of indebtedness which he may hold against such class of liens, except as last hereinbefore provided." It is unnecessary to state the exception. The proceeds of the sale were sufficient to pay off all the obligations of the first three classes, and a small *per cent.* of the bonds mentioned in the fourth class. As George L. Carter was the owner of all the stock of the Interstate Coal Corporation, the decree put payments made or offsets held or acquired by him on the same footing as if made or held by the purchaser.

It is claimed by the purchaser that, on February 1, 1917, it held a large amount of the debts of the 2nd and 3rd classes above mentioned, and that it intended to use these debts to offset its notes given for the deferred payments, and that if proper deductions were made for these debts, the fund left for taxation for 1917 amounted to only $211,-522.11. As to the assessment for 1918 it is claimed that the McHarg lien of $93,321.73 had been paid off by or for the purchaser prior to February 1, 1918, and that the notes for deferred payments should be still further reduced by the

amount of this debt, leaving for taxation for that year only $118,200.38.

The examiner of records certified to the commissioner of the revenue and the latter charged to the special commissioner of sale for taxation for 1917 and 1918 the full amount of the notes aforesaid, to-wit, $392,000.00. The special commissioner thereupon made a motion before the Circuit Court of Wise county to correct the assessments by allowing the credits claimed as aforesaid, but the court refused to change the assessment, and to its judgment this writ of error was awarded.

In the petition for the writ of error it is said: "The only question for the court to decide, is whether the special commissioner had the right to deduct from the assessment of the notes, first, the payment made by the purchaser on the McHarg lien, and second, the receiver's certificates and securities already held by the purchaser which it intended and still intends to use *pro tanto* instead of cash, in the payment of its notes."

The purchaser of the property owed the full amount of the notes, and had no right as purchaser to demand any tax reduction. Its rights in this respect, if any, grow out of its rights as *creditor* to be paid, in whole or in part, out of the proceeds of the notes. The tax in question is not a tax against the maker of the notes, but against the fund in the hands of the Special Commissioner, or under the control of the court, and is ultimately borne by the creditor whose evidence of debt is *pro tanto* at least released from the tax which would otherwise be assessed against it. Code 1904, section 492a, p. 254. It is the value of the fund that is taxable. The tax in question was assessed in pursuance of Acts 1916, p. 828; Acts 1915, p. 160, 162, and Code 1904, section 492a. Whether or not any deductions should be made is to be determined

from reading the statutes. If they authorize the deductions, they should be made; otherwise not. The fact that an individual assessed under class 1 of section 8, schedule C, is allowed to deduct his debts from the value of his assets, or that debts are to be deducted in ascertaining "net assets and capital" of corporations for taxation, furnishes no reason for making a similar deduction on property assessed under class 3 of schedule C. As said in *Bridgewater Mfg. Co.* v. *Funkhouser*, 115 Va. 476, 79 S. E. 1074: "the law making power has provided for no deduction of its indebtedness, and the idea that it intended to do so is negatived by the fact that, in the same statute, a deduction is expressly allowed in taxing another and different form of property."

[3] In ascertaining the value of choses in action under the control of the court, for the purpose of taxation, it is not proper to deduct offsets which have not been ascertained and allowed. They are the property of the holder thereof, and may be otherwise disposed of, or never brought into court and asserted. Furthermore, if the value of purchase money notes can be reduced by the deduction of debts which will ultimately be paid out of purchase money notes not yet due, or of unascertained dividends on debts to which the purchaser will or may be entitled in the future, it would greatly impair, if not destroy, the effective administration of the statutes imposing taxes on that class of property.

[4] In the petition for a writ of error in this case, in speaking of "receiver's certificates, receiver's notes and open accounts and coupons," acquired by the purchaser, it is said that "The Interstate Coal Company intended, and had (or has) the right to use the debts to offset the notes," and, in speaking of bonds of the Empire Coal Land Corporation which it had acquired, that "The Interstate Coal Company did not intend to receive payment for its bonds, but intended to offset their value against the notes." It is

plain, therefore, that what the purchaser was claiming was a mere set-off, and not a payment, and the evidences thereof were not delivered to the special commissioner until long after February 1, 1918. Indeed, it is admitted by the special commissioner that credit could not have been given the purchaser for the "Receiver's Certificates, coupons, and bonds" owned by it, and, in his petition for relief to the circuit court, filed in April, 1919, it is said that "while it is not proper or possible at present to give the purchaser credit for these items, it will be entitled to credit for them in the final settlement of the estate." If it was not possible then to give the credit, how could it have been given at an earlier date? The record shows why it was impossible, but we need not go into the details thereof, as it is admitted. It being impossible to give the credit, none was given, and as a result the purchase-money notes were taxable at their face value. The mere fact that the purchaser would be entitled to a credit "in the final settlement of the estate" could not justify the credit at an earlier date, and until the credit on the purchase-money notes was actually allowed they were properly taxable at their face value. The subsequent allowance of the credit did not relate back so as to affect the amount of the assessment which was proper at the time it was made.

As to the McHarg debt, which was the first lien on the fund, it abundantly appears that the title to this debt was not acquired until some time after February 1, 1918. None of these set-offs was surrendered to the special commissioner, or brought under the control of the court until after February 1, 1918. Until so surrendered they were the property of the purchaser, not subject to the control of the court or its officers, and could be disposed of by the purchaser as it pleased. Whatever may have been the purpose of the purchaser as to the disposition it intended to make of them,

they could not be applied as credits until so surrendered, and until that time, the purchaser being solvent, the face value of the purchase money notes represented the taxable fund. The presentation and application of the set-offs subsequent to February 1, 1918, did not relate back to the time of their acquisition so as to affect the value of the fund for taxation on that date.

We find no error in the judgment of the Circuit Court of Wise county and it is therefore affirmed.

*Affirmed.*