## THE SANITARY DISTRICT OF CHICAGO

### *v.*

## CHESTER S. ALLEN.

*Opinion filed February 17, 1899.*

1. EJECTMENT—*one relying on twenty year bar need not trace title to government.* One who proves continuous adverse possession of land by himself and his grantors for over twenty years need not trace his title to the government to sustain his right to recover.

2. SAME—*outstanding title is no defense if barred.* Proof of an outstanding paramount title will not defeat plaintiff's right to recover in ejectment if such title was barred at commencement of suit.

3. COLOR OF TITLE—*master's deed is color of title though not sealed.* A master's deed purporting to convey the land in controversy in ejectment, which is formal in all respects except as to its having no seal, is good color of title.

4. DEEDS—*what not a material alteration of deed.* Striking out the word "Vermont" and inserting "Illinois," by the grantor at the grantee's request after delivery, for the purpose of correcting the description, is not a material alteration, where the deed, before the change, referred to another recorded deed for a more particular description which was correctly drawn.

5. EVIDENCE—*tax receipts must identify the land.* Tax receipts which omit the number of the township and range are not sufficient to establish payment of taxes in connection with possession, in the absence of extrinsic evidence supplying the omissions.

6. ADVERSE POSSESSION—*one entering under another does not hold adversely.* One erecting fences and taking possession of land under permission of another cannot dispute the title under which he entered, as his possession is permissive rather than adverse.

APPEAL from the Circuit Court of Will county; the Hon. ROBERT W. HILSCHER, Judge, presiding.

F. W. C. HAYES, and HALEY & O'DONNELL, for appellant.

HILL, HAVEN & HILL, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of ejectment brought by Chester S. Allen, against the Sanitary District of Chicago, on the fourth day of December, 1894, to recover certain property described in the amended declaration, as follows: All that part of lots 3, 4, 5 and 6 in block 3, north of the plank road running from Lockport westerly to Plainfield, and lots 1 and 5 in block 4, and lots 1, 2, 3, 5 and 6 in block 5; all of block 8; lots 1, 2, 4, 5, 6, 7, 8 and 9 in block 9, and lots 1, 2 and 3 in block 10, in that part of Lockport known and platted as West Lockport. To the amended declaration the defendant pleaded the general issue, and a trial before a jury resulted in a verdict and judgment in favor of the plaintiff, to reverse which the defendant appealed.

The plaintiff in the circuit court did not undertake to establish a chain of title from the government to himself, but he claimed title, first, under twenty years' adverse possession of the premises before the commencement of the action; and second, under color of title and possession and payment of taxes for seven successive years. Plaintiff acquired title to all the property described in the amended declaration, except lot 7 in block 9, West Lockport, under a deed from John H. and Isaac J. Vail, of date February 8, 1864, and acquired title to lot 7 in block 9, West Lockport, by deed from Albert Z. Dow, of date April 24, 1868. The deed from the Vails to plaintiff, in addition to the property in controversy, conveyed other lands, such additional lands being shown by a plat in evidence, and adjoin the property in controversy.

In support of his claim of title plaintiff offered in evidence on the trial, first, a deed from Alanson Milks and wife to James Fish *et al.*, of date February 17, 1855, con-

veying the same property afterwards conveyed by the Vails to appellee; second, a mortgage from James Fish *et al.* to John H. and Isaac J. Vail, dated October 12, 1855, covering the same property described in the deed from Milks; third, a master's deed from J. Tilden Moulton, master in chancery of the Circuit Court of the United States, to John H. and Isaac J. Vail, of date April 8, 1859, conveying the same property described in the mortgage from Fish *et al.*, and containing certain recitals as to proceedings in said Circuit Court of the United States; fourth, an affidavit showing the destruction of the records of that court by fire; fifth, a deed from John H. and Isaac J. Vail to William Wood, dated January 31, 1862, conveying the same property as the preceding conveyances; sixth, a deed from William Wood to John H. and Isaac J. Vail, dated November 10, 1863, conveying the same property; seventh, a deed from John H. and Isaac J. Vail to Chester S. Allen, of date February 8, 1864, conveying the same property; eighth, a deed from Albert Z. Dow to Chester S. Allen, of date April 24, 1868, conveying lot 7, block 9, West Lockport; ninth, the plat of West Lockport, made by Lyman Hawley, William Rodgers, William Gooding, and others.

The plaintiff's color of title began with the deed from Alanson Milks and wife to James Fish and others, dated February 17, 1855. This deed purported to convey all the lots in controversy except lot 7, block 9, in connection with other property adjoining the lots, constituting what is now known as the "Allen farm." It appears from the evidence that the grantees in the deed went into the possession of the property under the deed in the spring of 1855, and occupied and used the property until the spring of 1862, when it was conveyed to William Wood, who went into possession. From 1855 to 1862 the farm was used by the Fishes as a dairy farm, and their cows were pastured upon the lots in question. William Bentley, James M. Fish, and others, testify that there was an old "stake

and rider fence" on the north side of the Lockport road, extending down near to the river.   This fence enclosed the lots, and the enclosure was used by the Fishes as a pasture.   In 1862 (January 31) the Vails conveyed the property to Wood, as before stated, and he went into possession and used the property until November, 1863. Mrs. Doxtater, a daughter of Wood, testified: "When my father lived on the farm where Mr. Allen lived, I lived at home.   I was fifteen years old.   My father lived on the farm from March, 1862, until November, 1863.   When I lived on the farm there was a fence along what is called the plank road.   It was a zig-zag rail fence.   I cannot tell how far down the plank road the fence extended positively—nearly down to the river."   She also testified that her father used the lots which were enclosed by the fence, as a pasture for sheep.   In November, 1863, Wood conveyed to J. H. and I. J. Vail, and on February 8, 1864, they conveyed to Chester S. Allen, the plaintiff, and after his purchase he went into possession of the property.   He testified that he re-built the fence enclosing the lots, and after re-building the fence he pastured the lots with his horses, cattle and sheep.   In 1874 he erected an ice house on one of the lots and used it as such from that time until the winter of 1886-87.

It thus appears from the evidence that from 1855 to 1887,—for a period of over thirty years,—the property in question was in the possession of appellee and his grantors, and used and occupied by them under a chain of title beginning with a deed from Alanson Milks and wife to James Fish and others, bearing date February 17, 1855. It is true that the defendant introduced evidence tending to prove that the property was vacant and unoccupied; but we are satisfied that the evidence upon that question preponderated in favor of the plaintiff, and the jury, from all the evidence, were justified in finding in favor of the plaintiff.   If, then, the plaintiff and those under whom he claimed entered into the possession of the property in

1855, claiming to own it, and occupied the property from that time for a period of twenty years, as the evidence tended to prove, under the limitation laws of the State plaintiff became the owner of the property, although he was not able to show a chain of title from the government to himself, and twenty years' adverse possession would bar a recovery of an action brought by the party holding the paramount title, or the holder of title under the twenty years statute of limitations could maintain an action to recover possession of the land against any person who might enter upon it after the twenty years statute had run. The rule indicated is well settled by the former decisions of this court. *Hinchman* v. *Whetstone*, 23 Ill. 108; *Paullin* v. *Hale*, 40 id. 274; *Riverside Co.* v. *Townshend*, 120 id. 9; *McDuffee* v. *Sinnott*, 119 id. 449.

In addition to the claim of title under the twenty years limitation act plaintiff also relied upon color of title and possession and payment of taxes for seven successive years under the Limitation law of 1839, but as plaintiff established a right of recovery under the twenty years statute it will not be necessary to consider this branch of the case.

Appellee introduced, as has been seen, several deeds to establish his claim of title to the premises involved, and it is claimed that the court erred in admitting in evidence two of the deeds, to-wit, the deed from J. Tilden Moulton, master in chancery of the Circuit Court of the United States to John H. and Isaac J. Vail and the deed from the Vails to appellee. The objection to the master's deed is that it was not under seal. Where a deed is relied upon for the purpose of conveying title to lands it must be under seal, but a deed in other respects formal, purporting to convey lands, may be good color of title although not under seal. (*Watts* v. *Parker*, 27 Ill. 224; *Kruse* v. *Wilson*, 79 id. 233; *Barger* v. *Hobbs*, 67 id. 592.) As the deed was offered in evidence as color of title, under the authorities cited it was admissible in evidence.

As to the deed from the Vails to appellee, objection was made that it had been altered after its execution. It appears from the evidence that the deed as first executed described the property as "lying and being in Lockport, in the county of Will and State of Vermont." Upon a discovery of the mistake the grantee returned the deed to the grantor, and the word "Vermont" was stricken out and "Illinois" inserted over the word "Vermont" and the deed then returned to the grantee. It may be that the mode adopted of correcting the mistake was irregular, but it did not destroy the instrument as color of title. Moreover, the deed described the land as "being the same premises conveyed to us, the said John H. and Isaac J. Vail, on the 8th day of April, 1859, by virtue of a deed executed by J. Tilden Moulton, master in chancery of the Circuit Court of the United States within and for the Northern District of Illinois, said deed being recorded in the land records of said county of Will and State of Illinois in book 59, pages 591, 592, 593 and 594, reference being had to said deed and the record thereof aforesaid for more particular description." Upon referring to the record of that deed it will appear the property was correctly described as being in the State of Illinois. It is therefore apparent that the deed, before the change, described the property with sufficient certainty. It follows that the change of the word "Vermont" to "Illinois" was not a material alteration of the instrument and did not vitiate the deed.

It is, however, claimed that the appellant showed on the trial an outstanding title in Colton Knox, which was sufficient to defeat a recovery in an action of ejectment. If an outstanding title was shown as claimed by appellant, that title was barred at the time of the commencement of this action by the twenty years' limitation, as held in *McDuffee* v. *Sinnott, supra.* It is there said (p. 451): "In the view we take of the case, however, it is unnecessary to enter upon a discussion of the Jackson title,

for conceding, for the purposes of the argument, it was the older and better title, yet it is clear, upon the facts as presented by the record, it was barred at the time of the commencement of this suit both by the twenty and seven years' limitation. The only answer made to this position is, that limitation acts can only be availed of as a shield and not as a sword, and a number of authorities are referred to as sustaining this position. In view of the repeated decisions of this court it would be a fruitless consumption of time to enter upon a discussion of the cases decided outside of this State, for whatever the rule may be elsewhere, it is now well settled in this State that whenever the bar of the statute has become absolute and the party entitled is in possession under it, it is thereafter just as available for attacking as for defensive purposes, and its availability in this respect will not depend at all upon the occupant continuing in the actual possession of the property. His rights in that respect are precisely the same as those of any other absolute owner of land."

But it is claimed that appellant established title to the property to be in itself. The title relied upon by appellant in the circuit court was the following: A tax deed dated March 8, 1865, purporting to convey the lots in controversy, except lot 4 in block 3, and lots 5 and 7 in block 9, to John F. Daggett. In connection with the deed the death of Daggett was proven, and that he left as his heirs Belle F. Boehme and Clara P. Mayo, who conveyed to appellant on May 15, 1894. The deed to Daggett was offered as color of title, and it was good color of title; but before appellant could rely upon the title thus acquired as a defense it was required to prove seven years' possession under color of title and seven successive years' payment of taxes on the premises. The claim was made that Daggett took possession of the property in 1886 or 1887 and continued in possession until his death, and thereafter his heirs held possession until they con-

veyed to appellant, in 1894, and that he paid all taxes for seven successive years. It is true that Daggett built a fence on three sides of the property in 1886 or 1887, but appellee testified that Daggett requested him to re-build his fence around the lots, and afterwards requested permission to build it himself and that appellee gave consent. If the possession which Daggett obtained by erecting the fence was under appellee, such possession would not be adverse and could not be relied upon to defeat appellee's title. It is a familiar rule that where one enters into possession of land under another he cannot dispute the title under which he entered. If Daggett obtained such possession as he had through and under appellee, as the evidence tends to prove he did, Daggett's possession was Allen's possession, and neither Daggett nor his grantees could afterwards avail of that possession as a defense in an action brought by appellee to recover the property. Moreover, the appellant failed to prove payment of taxes under color of title.

But it is claimed that the court erred in excluding the tax receipts, as evidence, from the jury. The court excluded the tax receipts offered in evidence for the reason that they failed to describe the property in controversy. The first description is: "W. fract. E. $\frac{1}{2}$ N. E. $\frac{1}{4}$ sec. 22, T. —, R. —, A. 35," wholly omitting the township and range. The next five descriptions are as follows: "S. E. part W. fr. N. E. $\frac{1}{4}$ sec. 22, T. —, R. —," thus wholly omitting the township and range. In the other tax receipts, extending from 1874 to 1893, both inclusive, the description is as follows: "S. E. part W. frac. N. E. $\frac{1}{4}$ sec. 22, T. 36, R. 10, A. 35." Conceding the lots in question are located in the quarter and section mentioned in the receipt, we do not regard the description sufficiently definite to identify the property upon which the taxes were paid. Where tax receipts contain descriptions of property too uncertain to identify the payments as having been made upon the particular property in dispute, and there is no

other evidence showing that the payments were made on the particular property, the receipts cannot be regarded as sufficient. (*Bell* v. *Neiderer*, 169 Ill. 54.) Appellant had the right to introduce oral evidence to show that payment was actually made on the property in question, if such was the case; but no such evidence was offered. We do not think the receipts, standing alone, were sufficient to show payment of taxes on the property involved, and they were properly excluded as evidence by the court.

Objection is made to appellee's third instruction. This instruction in substance informed the jury that if they believe, from the evidence, that Daggett requested of the plaintiff permission to erect the fences on the lots, and permission was given, and the fences were erected in pursuance of such permission, then the possession of Daggett of the property so fenced was in legal effect the possession of the plaintiff. The correctness of the principle announced in the instruction is not disputed, but it is said there is no evidence in the record upon which it can be predicated. We do not concur in that view. The evidence of appellee in regard to what occurred between him and Daggett in reference to fencing the lots was sufficient to authorize the giving of the instruction.

It is also claimed that the court erred in refusing defendant's instruction No. 2, which in substance directed the jury that admissions or conversations testified to long after the same had taken place are received with great caution, etc. The substance of this instruction was given to the jury in defendant's instruction No. 8, and its repetition in another form was not required.

It is also claimed that the court erred in refusing defendant's instruction No. 14. The instruction was contradictory and calculated to mislead the jury. Moreover, the jury were fully instructed on all questions involved in the case by instructions which were not objectionable.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*