## CHARLESTON.

STATE v. SHELTON L. REGER *et als.*

Submitted October 17, 1922. Decided October 24, 1922.

1.  TAXATION—*Tax Deed Without Seal Void.*

    A writing in the form of a deed, executed by the clerk of a county court, under the provisions of section 19, chapter 31, Code, for land sold by a sheriff for non-payment of taxes assessed thereon, purporting to grant to the purchaser the land so sold, but which omits the seal then provided by law, is void and does not pass any title to the land, legal or equitable. (p. 83).

2.  SAME—*Deed Void for Omission of Seal Could Not be Corrected More Than Five Years After Tax Sale.*

    Such deed can not be corrected by the clerk of the county court after five years from the date of the tax-sale, unless the execution or correction thereof is refused by the clerk or stayed by proceedings, in which event the period occasioned by such refusal or stay, pursuant to section 22, chapter 31, Code, is not to be computed as part of the period of five years. (p. 92).

3.  SAME—*Execution of Void Tax Deed and Assessment and Payment of Taxes Will Not Estop State to Sell Land as Forfeited.*

    Such a deed, void for want of seal, and the continuous assessment and payment of taxes on the land in the name of the grantee for ever so long a period will not estop the state in a suit brought under chapter 105, Code, to sell the land as forfeited for non-entry for taxation in the name of the owner for whose default it was sold by the sheriff. (p. 93).

4.  ADVERSE POSSESSION—*Void Tax Deed Color of Title, Enabling Grantee, by Possession and Payment of Taxes, to Acquire Title and Defeat State's Title Asserted by Forfeiture.*

    But such tax deed, though void for want of seal, is nevertheless color of title; and the grantee, if he be not one for whose default the land was returned delinquent, nor his heir nor devisee, may by actual continuous possession of such land,

under color of title evidenced by such void deed, for five successive years, and by the payment of all state taxes chared or chargeable thereon in his own name for such period, acquire title thereto, pursuant to the third classification under section 3, article 13 of the Constitution, and thus defeat the state's title asserted by forfeiture. (p. 85).

5.    TAXATION—*Purchase of land at Tax Sale by Equitable Owner of Undivided Interest Operates as a Redemption of the Lands.*

A purchase of land at a tax-sale by the equitable owner of an undivided interest therein operates as a redemption of the land so sold. (p. 86).

6.    EQUITY—*Decree Held a Final Decree, Notwithstanding Provision for Accounting.*

Where the state files its bill to have declared void a tax-deed for certain land sold to the grantee named in the deed, to declare forfeited the title thereto for non-entry for taxation and non-payment of taxes in the name of the former owner, and a claimant thereto files his answer admitting the deed to be void and the land forfeited and offers to redeem, a decree cancelling the tax deed, adjudging the title to be forfeited and the claimant entitled to redeem, is a final decree. (p. 83).

7.    SAME—*Amended Answer After Rendition of Final Decree Regarded as Motion for Rehearing, and Order Referring Matters to Commissioner Will Prevent Final Decree From Operating as Such.*

However, if afterwards, but at the same term at which such final decree is entered, another claimant to such lands files an amended answer or petition showing that he has been misled by the allegations of the bill to admit in his original answer that the tax deed sought to be cancelled is void for want of seal, when in fact it had a seal; that such final decree was based on certain exhibits which were not filed with the bill as was purported to have been done and which allegations claimant shows he relied on as being true but which he has since found were not true and now denies; that the tax deed is lost and the state has no proof that it has no seal; that there was an agreement in open court between counsel for plaintiff and counsel for claimant that the taxes had been paid down to and including the year in which the suit was brought, but which the final decree does not mention; and the court then refers all the matters averred in claimant's amended answer to a Commissioner, to whom the cause had been committed, to investigate and report thereon; such amended answer will be treated as a motion for re-hearing and the order of the court thereon

as a grant of re-hearing; and although such final decree is not formally set aside, the order referring such matters to the Commissioner will prevent the final decree from operating as such.  (p. 90).

Appeal from Circuit Court, Randolph County.

Proceeding by the State of West Virginia against Shelton L. Reger and others to declare lands forfeited for nonpayment of taxes and nonentry on the land books in the names of the owners, and to sell lands for benefit of general school fund. From a decree rendered in such proceeding, the State and certain claimants appeal.

*Affirmed in part. Reversed in part. Remanded.*

*A. M. Cunningham,* for the State.

*Samuel T. Spears,* for appellants, Reger, Goldaine, Jennings, Scully and others.

*W. B. & E. L. Maxwell,* for appellees Murphy and Moore, Keppel & Co.

MEREDITH, JUDGE:

At July Rules, 1918, the State, by A. M. Cunningham, Commissioner of School Lands of Randolph County, filed its bill to declare forfeited for non-payment of taxes and non-entry on the land books in the names of the owners and to sell for the benefit of the General School Fund ten separate parcels of land. It covers the following tracts: No. 1, 133 acres, known as the Martha E. Poe land; No. 2, 155 acres, known as the Ward land; No. 3, 524 acres, known as the Huffman-Hutton-Jennings land; No. 4, 16½ acres, known as the Mary C. Corbett land; No. 5, 93 acres, known as the C. H. Burke land; No. 6, 142 acres, known as the R. M. Johnson land; No. 7, Lot No. 9, Block 2, Graham and Davis Addition to Elkins, known as the Daniel Rau lot; No. 8, Lot No. 138, Block 20, in Elkins, known as the Ignatius Cain lot; No. 9, Lot No. 95 in Block 12 in Elkins, known as the Daniel Rowe lot; and No. 10, Lot No. 9 in the Wees Addition to Elkins, known as the Pat Powers lot.

Four of the parcels are not involved on this appeal. No.

5, or the C. H. Burke 93 acres, seems to have been dismissed by decree entered November 13, 1918; No. 8, or Lot No. 138, Block 20, known as the Ignatius Cain lot, was dismissed by decree entered June 3, 1919; No. 9, or Lot No. 95, Block 12, known as the Daniel Rowe lot, was dismissed by decree entered March 15, 1919; and No. 10, or Lot No. 9 Wees Addition, known as the Pat Powers lot, was dismissed by decree entered June 2, 1919.

At any rate, the present record involves only six parcels: No. 1, the Poe 133 acres; No. 2, the Ward 155 acres; No. 3, the Huffman-Hutton-Jennings 524 acres; No. 4, the Mary C. Corbett 16½ acres; No. 6, the R. M. Johnson 142 acres; and No. 7, Lot No. 9, Block 2, Graham and Davis Addition, known as the Daniel Rau lot.

The questions arising on the appeal involve the validity and effect of certain decrees. The first of these was entered June 2, 1920. To discuss it intelligently, it is necessary to quote part of it. That part is as follows:

> "It is, therefore, adjudged, ordered and decreed that the following TAX DEEDS OR TITLES be set aside, cancelled, annulled and held to be void by reason of the failure of the clerk of the County Court to affix, attach or annex the Seal or Scroll thereto, provided by law shall be annexed, affixed or attached after the name of the grantor.

> 1. With respect to what is known as the Martha Poe tract of 133 acres, and also known in this *proceedings* as 131 acres, in New Interest District of this County, and with regard to all of the matters shown and alleged in paragraph I of the bill of complaint with respect thereto, the Court is of the opinion that this cause is for Shelton L. Reger and his alienee, Margaret Goldaine, and that the tax deed from Floyd J. Triplett, late Clerk of the County Court of this County, to the defendant, S. A. Moore, and which is recorded in Deed Book T, page 287, is void, and vested no title in the said Moore, by reason of the other matters contained in said bill in said paragraph I, this court now here holds that the said Margaret Goldaine has the right to redeem said tract

of land from the forfeiture for the non-payment of taxes as in said paragraph is alleged, and the said Margaret Goldaine may redeem the same in the manner hereinafter provided.

2. That with respect to what is known as the Ward tract of 155 acres on Shaver's Fork of Cheat River, in Beverly District, and referred to in paragraph II of the plaintiff's bill of complaint, and upon the allegations in said paragraph contained and the separate answer of Boyd Weese filed herein, the Court is of opinion that the tax title or deed therein referred to, dated the 22nd day of December, 1894, from Floyd J. Triplett, late Clerk of the said County Court, to the said P. H. Weese, the ancestor of the said Boyd Weese, and which deed is recorded in Deed Book No. 51, page 71, is void, and that the possession alleged in said answer does not ripen into perfect title in the said Boyd Weese or the other heirs of the said P. H. Weese; and it is, therefore, adjudged, ordered and decreed that A. B. Ward and J. A. Ward are entitled to redeem said tract of land by the payment of the tax thereon, as hereinafter provided, from the forfeiture alleged in said paragraph of said bill.

3. That with respect to the Huffman-Hutton-Jennings tract of 524 acres, situate in Middle Fork District of this County, described and referred to in the III paragraph of the plaintiff's bill of complaint, and looking to the answers and exhibits of C. D. Scully and John T. Jennings and others filed herein with reference to said tract, that the Valley Company and Moore-Keppel Company ask leave to file answers herein, which answers shall be filed before the Commissioner in Chancery to whom this cause is hereafter referred; and all questions touching the tax title in said *Third* paragraph are reserved until the coming in of said report and who is entitled to redeem said tract of land under said petitions and answers already filed and any other answers with respect thereto, if any one, from the forfeiture alleged in said bill, shall be ascertained by the Commissioner in Chancery, to whom this cause will be hereinafter referred.

4.   That with respect to the Mary C. Corbett tract of 16½ acres in Huttonsville District, and fully described in the IV paragraph of the plaintiff's bill of complaint, there is no appearance or defense by any one, and that the tax deed dated the 28th day of January, 1895, from Floyd J. Triplett, late Clerk, to H. H. Woodford, and recorded in Deed Book No. 51, at page 168, the Court holds void, and the said Mary C. Corbett, her heirs and alienees are entitled to redeem this tract of land from the forfeiture in said bill of complaint alleged.

5.   That with respect to the R. M. Johnson tract of 142 acres in New Interest District of this County, and described in the VI paragraph of the plaintiff's bill of complaint and the other pleadings filed herein with regard thereto, the Court is of the opinion and now here so holds that the alleged tax deed from Floyd J. Triplett, late Clerk aforesaid, dated the 1st day of December, 1894, to Leland Kittle and J. F. Harding, and recorded in Deed Book No. 51, page —, is void, and that the heirs of George W. Barnhard are entitled to redeem this tract of land from the forfeiture in said paragraph of said bill charged, and that they are entitled to the value of the timber cut, manufactured and taken therefrom by C. J. and Eddie D. Murphy, and that the taxes and the value of the timber shall be ascertained as hereinafter directed.

·6.   That with respect to Daniel Rau lot No. ·9, Block No. 2, in the Graham-Davis Addition to the city of Elkins, referred to in paragraph VII of the plaintiff's bill of complaint, and the tax title therein referred to alleged to be void, the Court is of the opinion upon the matters alleged in said paragraph with respect thereto, and the several answers and petitions filed thereto, that the question of the time of possession under subsequent deeds to that of the tax title therein alleged to be void should be, first, determined, so as to ascertain whether it is necessary to set aside said tax title therein referred to, and, therefore, this question will be referred to a Commissioner in Chancery for the purpose of determining the time and character of possession under such subsequent deeds.''

By the same decree the cause was referred to Commissioner R. H. Allen who was directed to report: (a) as to the tracts wherein the tax deeds were set aside, who is entitled to redeem such tracts, the taxes, interest and costs; (b) the amount and value of timber cut by the Murphys from the 142-acre tract (R. M. Johnson land), the damages, if any, to the surface by reason of cutting the timber; (c) as to the tracts wherein the tax deeds have not been set aside, to report the time and character of possession, and under what titles such possession has been held by the respective parties, who have filed answers or petitions as to such tracts, and leave is given the parties or any other persons interested to file further or original petitions or answers and produce evidence respecting the same.

The questions respecting the above mentioned decree involve its effect as to the respective parcels and its character of finality, as no appeal was taken in this cause until November 2, 1921, but before discussing that, reference should be made to the other decrees. On June 8, 1920, six days after the first decree was entered, and at the same term, a second decree was entered, filing the petition and answer of Moore, Kepple & Co. respecting the 524 acres, and the petition and amended answer of C. J. and Eddie D. Murphy respecting the R. M. Johnson 142-acre tract, and the matters mentioned therein were referred to Commissioner Allen to be considered by him in executing the order of reference.

The effect of this second decree upon the decree entered June 2, 1920, is to be considered.

Commissioner Allen filed his report February 14, 1921, to which various exceptions were taken.

On June 10, 1921, a third decree was entered, decreeing that as to all the tracts that had not theretofore been dismissed, the case was for the defendants, dismissed the bill and set aside all former orders and decrees in conflict with the decision then reached by the court, but expressly reserved that the decree should not be construed to adjudicate any right between any of the co-defendants. From this decree, appeals were taken by the state and by various claimants. It

will be observed that this decree affects the state's claim to each of the six parcels in controversy and it will be necessary to take up each parcel separately, as different questions arise thereon.

## No. 1, OR THE MARTHA E. POE 133 ACRES.

This is the first tract mentioned in the decree of June 2, 1920. The bill alleges that under a pretended return of the sheriff in 1893, purporting to sell this tract for non-payment of taxes thereon assessed for the years 1891 and 1892, in the name of Martha E. Poe, the owner, a writing purporting to be a deed was made on January 16, 1895, by the county clerk to S. A. Moore, assignee of J. H. Moore, the supposed purchaser; that the deed is void because the clerk failed to affix his seal thereto; that thereafter the land was left off the land books in the name of Martha E. Poe; that in 1894 said Poe's title was sold in a chancery cause to C. H. Scott, and assessed in his name for the years 1895 and 1896, returned delinquent for those years, and sold in 1897 to the state for non-payment of said taxes; that on April 7, 1911, Scott conveyed the land to Shelton L. Reger; that he failed to cause it to be assessed or to pay taxes thereon thereafter; that the legal title is in the state.

Reger answered, saying he had conveyed the land to Margaret Goldaine. She filed her petition admitting the tax deed to be void, that the title had been forfeited to the state, and expressed her desire to redeem. She appears to be the only claimant. The decree of June 2, 1920, declared the tax deed void, set it aside, and held that Goldaine had the right to redeem the land by payment of the taxes, interest and her share of the costs, which were directed to be ascertained by Commissioner Allen, to whom the cause was referred. The decree as respects this tract is final. It settles all matters, except the amount of taxes, interest and costs to be paid. It determined the forfeiture, set aside the tax deed, and fixed definitely the name of the party entitled to redeem. The right of the state to the forfeited title was

fixed by the decree. The decree was not appealed from, nor was it set aside or modified as respects this tract at any time during the term. The rights of the parties interested in the tract were ascertained and determined by it. The fact that an accounting was thereafter to be had did not prevent this part of the decree from becoming final. It follows, therefore, that the decree of June 10, 1921, which dismissed the bill as to this tract, is erroneous, and should in that respect be reversed.

## No. 2, WARD 155 ACRES.

The bill alleges that this tract was conveyed to the defendants A. B. and J. A. Ward in 1880; that in 1891 and 1892 it was returned delinquent for non-payment of taxes, and in 1893 was sold by the sheriff to P. H. Wees; that the County Clerk after the expiration of one year executed to P. H. Wees what purports to be a deed for the land, but that the writing is void for want of seal and does not constitute color of title in the purchaser nor did it divest the Wards of their title; that since 1893 it has been left off the land books in the name of the Wards and therefore the title is forfeited to the state; that by certain conveyances the interest of P. H. Wees passed to the defendant Boyd Wees, but that these do not divest the state of its title.

Boyd Wees answered the bill; denied that the tax deed was void, but averred that whether it was void or not, he had the best title to the land because in 1884 the two Wards conveyed this tract to P. H. Wees, by deed, but that the deed became lost before recordation; that the taxes thereafter were assessed thereon in the name of the Wards, and P. H. Wees, failing to find his deed, allowed the land to be returned delinquent and purchased it at the sale. He also states how he thereafter acquired the land; that the tract lay adjacent to two other large tracts belonging to P. H. Wees, and in 1884, he built a fence around the three tracts, cut the timber and cleared the land; that from that time to the present P. H. Wees and his alienees have had actual, notori-

ous and adverse possession thereof, and that respondent still has like possession; that beginning with the year 1884 and continuing each and every year down to and including the year 1918, he and his predecessors in title have paid the taxes assessed against the 155-acre tract, except for the years 1891 and 1892, and instead of paying the taxes, P. H. Wees allowed the land to be returned delinquent for the express purpose of purchasing the same, so that he might record his title, and denies that there are any taxes due the state thereon for any of the years 1884 to 1918 inclusive.

The court by its decree of June 2, 1920, adjudged the tax deed void and held that the actual possession set up in the Wees answer did not ripen into perfect title; in other words, that the tax deed, being void on its face for want of seal, did not afford color of title, which followed by actual possession for five successive years and payment of all taxes charged or chargeable thereon would defeat the state's title We think this was error. This court held in *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828, syllabus, Pt. 20, that "A void tax deed is good color of title both for the purposes of section 3, Art. 13 of the Constitution, and the statute of limitations." The tax deed in that case was not acknowledged or proved, but was recorded. It was held that it was void and passed no title, yet it was color of title, since it was a formal paper purporting to pass legal title, giving description by boundaries, and in itself importing claim of ownership and prima facie adverse possession. True, in that case it was not void for want of seal, as in this case, but as was said in *Mullan's Adm'r* v. *Carper,* 37 W. Va. 215, 16 S. E. 527, "Any written instrument, however defective, or imperfect, no matter for what cause invalid, purporting to sell, transfer or convey title to land, which shows the nature and extent of the party's claim, constitutes color of title within the meaning of the law of adverse possession."

In *Deputron* v. *Young,* 134 U. S. 241, it was held that in Nebraska though a tax deed not executed by the county treasurer under his seal of office is void, yet it is sufficient color of title to support adverse possession to the property

therein described. See also, *Pillow* v. *Roberts,* 13 Howard (U. S.) 472, 14 L. Ed. 228; *Barger* v. *Hobbs,* 67 Ill. 592; *Kruse* v. *Wilson,* 70 Ill. 233; *Davis* v. *Hall,* 92 Ill. 85; *Sanitary District of Chicago* v. *Allen,* 178 Ill. 330; 53 N. E. 109; *Aylward* v. *O'Brien,* 160 Mass. 118, 35 N. E. 313; *Perkins Land & Lumber Co.* v. *Irvin,* 200 Mo. 485, 98 S. W. 580; *Jackson* v. *Newton,* 18, *Johnson* (N. Y.) 355.

The court also totally ignored the claim of Wees that he claimed under a title by purchase from the Wards. If his claim were true, then the purchase of the land at the tax sale was a mere redemption. If his claims were true there was not one dollar of taxes due the state on this tract. From 1884 to 1918 the taxes had been paid by Wees and his predecessors in title and there could have been no forfeiture. However, this seems to have been overlooked by the trial court, and it entered the decree declaring the title forfeited to the state. Wees did not appeal and in that respect the decree has become final. The decree also finds that the two Wards are entitled to redeem. Of course, under the pleadings this was error. They were summoned by order of publication. The record shows that one of them is dead and his heirs were ascertained by the commissioner. Neither of the Wards nor any of the heirs of the one deceased appear to have filed any petition or answer, claiming right to redeem. Whether the decree is final as between them and Wees we need not decide. It would be improper to express any opinion on that question on the present record. As the decree is final as between the state and Wees, the court erred in its decree of June 10, 1921, in dismissing this tract from the cause, and in that respect the decree will be reversed.

No. 3, THE HUFFMAN-HUTTON-JENNINGS 524 ACRES.

As to this tract, the decree of June 2, 1920 is clearly not final. The only question arising with respect to it is whether the court erred in dismissing it from the cause under the decree of June 10, 1921.

The bill alleges that on November 9, 1868, Mary Brown and others conveyed this tract to John S. Huffman; that in 1883 it was returned delinquent in the name of John S. Huffman's heirs and sold in 1885 to W. Scott Woodford and J. H. Jennings and that Woodford assigned his interest in the purchase to Alfred Hutton; that on October 28, 1887, the Clerk of the County Court and Woodford conveyed the 524 acres to Alfred Hutton and J. H. Jennings; that in 1892 it was returned delinquent in the names of Hutton and Jennings and sold in 1893 to Ressia Hutton and Monzella Woodford, and in 1894 the County Clerk made a deed to the two purchasers which is void for want of seal; that such paper does not constitute color of title; that it did not divest Alfred Hutton and J. H. Jennings of their title, in whose names the land has not been assessed since 1894, and therefore their title is forfeited to the state. The bill makes the heirs of Alfred Hutton and J. H. Jennings parties defendant. It further alleges that Ressia Hutton and husband and Monzella Woodford and husband on June 19, 1899, conveyed the 524 acres to defendant Valley Company; that this deed did not confer color of title and is void because the basis of this deed is the illegal tax deed mentioned; that on November 22, 1909, the Valley Company conveyed the timber on the 524 acres to defendants Moore, Kepple & Co., but this deed is also void and does not afford color of title to the timber rights.

Moore, Kepple & Co. and the Valley Company answered the bill and among other matters alleged that when the 524-acre tract was sold for taxes in 1885, to Woodford and Jennings, and Woodford assigned his interest therein to Alfred Hutton, and Woodford and the County Clerk conveyed it to Alfred Hutton and J. H. Jennings, in 1887, Alfred Hutton accepted and then held the half interest therein in trust for the benefit of his sister, Monzella Woodford. Documentary evidence exhibited with the answers supports the statement. That when the land was again sold for taxes in 1893, and purchased by Ressia Hutton and Monzella Woodford, she, Monzella Woodford, was then the owner of an undivided

half of the land, and this purchase merely operated as a re-
demption; that since that time though the land has not been
assessed in the names of Alfred Hutton and J. H. Jennings,
since 1894, yet ever since that date to the present it has been
assessed in the names of Ressia Hutton or Monzella Wood-
ford or their alienees, the present claimants, and all taxes
have been paid thereon. Under the circumstances disclosed,
we think a purchase by Monzella Woodford was a redemption
of the land; that while the tax deed made by the County
Clerk in 1894 is void for want of seal, yet the land was
merely redeemed, and assessment of taxes in the names of
Ressia Hutton and Monzella Woodford and their alienees
and payment thereof by them prevented a forfeiture, and
that the state has no claim to this tract. The averments of
the answer are clearly supported by the exhibits filed there-
with. The decree of June 10, 1921, dismissed this tract. So
far as the state's claim thereto is concerned this was not
error.

But the Jennings heirs, who claim an undivided one-half
interest in the tract, insist that the court should have gone
on and determined the title as between them and Valley
Company and Moore, Kepple & Co., and that it was error to
dismiss this tract insofar as it affected their interests. We
do not think so. The court expressly reserved the rights as
between co-defendants. While section 7, chapter 105, Code,
provides that suits of this character shall be proceeded in,
heard and determined in the same manner and in all re-
spects as other suits in chancery are prosecuted and pro-
ceeded in, and subject to the same rules of chancery prac-
tice as other suits in chancery, except as otherwise provided,
yet the preceding section clearly shows that when the court
ascertains that the state has no interest in the lands in con-
troversy the suit is to be dismissed as respects such lands.
We do not decided what would be the duty of the court in
case rival claimants submitted their claims to the court and
insisted on having them determined in such suit, where it
was ascertained the state had no interest. Such is not the
situation here. So as respects the claim of the Jennings

heirs to the tract of 524 acres there was no error in dismissing the bill. Their rights were reserved, which they may assert in a proceeding of their own choice. The decree as to the 524 acre tract will be affirmed.

## No. 4, OR THE MARY C. CORBETT 16½ ACRES.

Under the averments of the bill, this tract was forfeited in a manner similar to that of tract No. 1. No defense was made by any claimant. As to this tract, the decree of June 2, 1920, declaring it forfeited, and that Mary C. Woodford, her heirs or alienees, are entitled to redeem, is final; the court by its decree of June 10, 1921, dismissing the bill as to this tract, committed error, and the decree in that respect must also be reversed.

## No. 5, R. M. JOHNSON 142 ACRES.

As to this tract the bill alleges it was conveyed by D. T. Elliott and others to R. M. Johnson, by deed dated January 4, 1890; that on February 1, 1894, Leland Kittle, as Special Commissioner in the chancery cause of *Elliott* v. *Johnson,* sold and conveyed it to George W. Barnhard; but that it was returned delinquent in Johnson's name for the year 1892 and sold for non-payment in his name in 1893 to Leland Kittle and J. F. Harding; that the County Clerk conveyed it to Kittle and Harding December 1, 1894, by deed, which is void for want of seal, and which deed, the state claims is not color of title, and that since 1892 the land has not been assessed in either Johnson's or Barnhard's name, nor have they paid any taxes thereon, and the title is forfeited to the state.

C. J. Murphy and Eddie D. Murphy filed an answer averring they bought the land from Kittle and Harding, October 19, 1916; that the land was regularly assessed to Kittle and Harding since 1895 and the taxes promptly paid down to 1918; denying that there was any forfeiture to the state because the land was not assessed in the name of Johnson

or Barnhard; averring that they have taken and been in possession of the tract since soon after the execution of their deed. An injunction was awarded restraining them from cutting certain timber on the land.

By the decree of June 2, 1920, the court declared void the tax deed made by the County Clerk to Kittle and Harding, under whom the Murphys claim title, and decreed that the heirs of George W. Barnhard are entitled to redeem the land, and that they are entitled to the value of certain timber cut by the Murphys. Had that decree stood as shown by the Fifth paragraph quoted above, it would have been final, and the Murphys having failed to appeal therefrom would have been helpless; but fortunately they filed an amended answer on June 8, 1920, heretofore referred to, and the matters arising thereon were referred to Commissioner Allen. That amended answer shows that the decree of June 2, 1920 with reference to this tract was based on certain exhibits, Nos. 17. 18 and 19, which were not filed with the bill, as was purported to have been done, and the defendants relying on the statements made in the bill, made certain admissions in their original answer which they have found since were not true; they deny that one of said exhibits, to-wit, the tax deed from the County Clerk to Kittle and Harding, had no seal; they further aver that the original deed is lost; that plaintiff is without proof that the deed has no seal; that there was an agreement in open court between counsel for plaintiff and for respondents that the taxes had been paid on said land down to and including the year 1918, but which decree of June 2, 1920, makes no mention of. When this amended answer is considered with the decree filing it and referring it to the Commissioner, and in connection with the matters mentioned in the decree of June 2, 1920, we think the Fifth paragraph of the decree of June 2, 1920, is not final as to the Johnson 142 acre tract, but it was opened and the matters with reference thereto were held in abeyance to be acted upon after investigation and report of the Commissioner. This amended answer can not be regarded as a bill in the nature of a bill of review, as suggested by counsel, but

rather a petition for rehearing, and the decree filing it a grant of rehearing. But whatever it may be called, no matter. It is the business of courts to administer justice and the action of the court should be liberally construed in favor of the Murphys. They bought the land and spent considerable money on it in good faith. The state has received its taxes for twenty-five years and is seeking to collect them again, and we are doing no violence to require it to show strict right to this double tax. So, we hold that as to this tract, the decree of June 2, 1920, is not final. It was opened up to let in further defense, and that defense is not yet closed. If they have been in possession for five successive years and paid the taxes charged or chargeable thereon, then, under section 3, article 13 of the Constitution their title is superior to that of the state, even though the deed made by the County Clerk to Kittle and Harding be void for want of seal. The record does not disclose whether they have paid the taxes since 1918, nor that they have been in possession since the filing of the amended answer. Time continues to run against the state in such cases until its title has become transferred, either by adverse possession under claim or color of title and lapse of time and payment of taxes, or by sale by the state. *State* v *Harman, supra.* So it may be that by this time the Murphy title has become perfect. The tax deed, though void, is color of title; likewise their deed from Kittle and Harding is sufficient for that purpose; so if they show actual continuous possession for five successive years and payment of taxes, the state will have no claim thereon. This may be shown when the case goes back. But the court erred in its decree of June 10, 1921, in dismissing the bill as to this tract and will be reversed in that respect.

No. 7, DANIEL RAU LOT, No. 9, BK. 2 GRAHAM & DAVIS ADN.

The bill alleges that this lot was conveyed to Daniel Rau April 22, 1890; that it was returned delinquent for the year 1891 in Rau's name, and sold in 1893 to W. F. Stout; on December 3, 1894, the County Clerk executed a deed to the

purchaser which is void for want of seal; that this deed did not divest Daniel Rau of his title and that Rau has failed since 1891 to have the lot entered on the land books for taxation, and that it is now forfeited to the state; that by divers conveyances from Stout and others the lot was conveyed to defendant W. S. Ray, March 28, 1913, and that he is now in the possession thereof, and claims title thereto under said deed. Ray's answer was filed May 23, 1919, but it is omitted from the record. Depositions taken in his behalf before the commissioner appears also to be omitted from the record, but the commissioner in his report thereon shows that R. E. L. Currence, one of the former owners, and W. S. Ray have paid all taxes assessed against them on the lot since the year 1904, including that year, and that the lot has been in actual possession of these persons beginning at least as early as 1906, and continuously since 1913, a period of at least five successive years actual and continuous possession under color and claim of title; that the lot has been under fence, a portion of it during this whole period in use as a garden, and a garage located thereon since 1912. We think the record clearly shows that the state has no title to this lot, and that the court was clearly right in its decree of June 10, 1921, in dismissing it from the cause, and the decree in that respect is affirmed.

It is insisted by some of the claimants that the County Clerk could correct the several tax deeds. The County Clerk who executed the ten separate deeds involved in this proceeding was no longer Clerk. He offered by petition filed in the cause to make correction of the deeds or to execute new deeds. The court refused to permit him to do so. Under the provisions of chapter 31, Code, the purchaser of lands at a tax sale may obtain a deed at any time after the expiration of one year from the date of sale and before the expiration of five years, but not afterward, except that on computing the period of five years any time during which proceedings are pending to compel the execution of such deed as provided in section 22, chapter 31, Code, or during which the making of such deed is enjoined or stayed by any legal

process or proceeding, shall not be computed.  More than five years had elapsed from the date of the several sales.  The making of proper deeds was in no wise stayed, hence the County Clerk could not correct the deeds nor execute new deeds after the expiration of five years from the dates of the several sales.

But it has been strenuously argued that the state is estopped; that it sold the lands for taxes and received the money; the purchasers accepted what purported to be deeds made by the duly elected officer representing the state, had them recorded, caused the lands to be entered on the land books for taxation in the names of the purchasers, and have paid all the taxes assessed thereon since that time, some for a period of nearly thirty years, and that it is inequitable for the state to collect taxes twice on the same land for the same period, once from the tax-purchaser and again from the person in whose name the land was sold, or from those claiming under him.  It may be inequitable.  Indeed, we concede it; but application must be made to the legislature for relief.  It makes the tax laws; we but construe them.

The decree of June 10, 1921, will be affirmed in part, and reversed in part, as above indicated, and this cause is remanded for further proceedings.

*Affirmed in part.  Reversed in part.  Remanded.*